[Cite as *State v. Drummond*, 2024-Ohio-81.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case Nos. 22CA11 |
| | : | 23CA2 |
| v. | : | |
| | : | <u>DECISION AND</u> |
| CHRISTOPHER DRUMMOND, | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| Defendant-Appellant. | : | **RELEASED 1/8/2024** |

_____
APPEARANCES:

Christopher Pagan, Repper-Pagan Law, Ltd., Middletown, Ohio, for Appellant.

Jason Holdren, Gallia County Prosecuting Attorney, and Jeremy Fisher, Assistant Gallia County Prosecuting Attorney, Gallipolis, Ohio, for Appellee.
_____

Smith, P.J.

{¶1} Christopher Drummond, Appellant, appeals from the judgment of the Gallia County Court of Common Pleas revoking his community control in two cases and sentencing him to consecutive terms of imprisonment. On appeal, Drummond contends: 1) that his underlying conviction for failure to appear was unconstitutional because he received ineffective assistance of counsel; 2) that the trial court erred by imposing consecutive sentences; and 3) that it is unlawful to deny his appellate counsel a copy of his presentence investigation report to investigate, research, and present issues for appeal. As explained further below,

because Drummond was not granted leave to appeal his underlying conviction for failure to appear, his first assignment of error which challenges the validity of that conviction, has been stricken from his appellate brief. Thus, we do not consider it. Further, because we have found no merit to his second and third assignments of error, they are both overruled and the judgment of the trial court is affirmed.

## FACTS

{¶2} On January 16, 2020, Drummond was indicted for grand theft of a motor vehicle, a fourth-degree felony in violation of R.C. 2913.02(A)(1). While the case was pending, he failed to appear for a scheduled hearing. As a result, he was charged with failure to appear, a fourth-degree felony in violation of R.C. 2937.99(A). He ultimately entered into a plea agreement with the State which required him to plead guilty to both charges in exchange for a recommended sentence of 24 months of community control. At the original sentencing hearing, the trial court imposed the agreed-upon sentence of community control and it also reserved 18 month prison terms on each of the offenses. The trial court informed Drummond that if he violated his community control, the reserved prison terms would be imposed consecutively for an aggregate prison sentence of 36 months. The trial court also went on to make consecutive sentence findings, which it included in the sentencing entry.

{¶3} Drummond subsequently violated his community control by failing to report to the probation department, missing or refusing drug screens, and absconding from supervision all together. A revocation hearing was held on July 5, 2022. Drummond admitted to the charged violations and the matter was scheduled for sentencing on July 26, 2022, at which time the trial court sentenced Drummond to the reserved 18-month prison terms in each underlying case. The trial court ordered these terms to be served consecutively for an aggregate prison term of 36 months.

{¶4} Drummond immediately appealed from the judgment revoking his community control and sentencing him to prison on the underlying grand theft of a motor vehicle case. However, he failed to file an appeal from the judgment entry that revoked his community control in the underlying failure to appear case. He later moved this Court to permit him to file a delayed appeal from the revocation of community control related to his failure to appear conviction, which we granted. His motion for delayed appeal appears to have also sought leave to appeal from his underlying conviction for failure to appear. After further briefing, we denied leave to appeal the underlying conviction. These matters are now before us, having been consolidated for purposes of appeal.

ASSIGNMENTS OF ERROR

I. DRUMMOND'S FTA CONVICTION WAS UNCONSTITUTIONAL BECAUSE HE RECEIVED

INEFFECTIVE ASSISTANCE OF COUNSEL [IAC] AT THE PLEA HEARING.

II.     THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES.

III.    IT IS UNLAWFUL TO DENY APPELLANT [SIC] COUNSEL A COPY OF DRUMMOND'S PSI TO INVESTIGATE, RESEARCH, AND PRESENT ISSUES FOR APPEAL.

ASSIGNMENT OF ERROR I

{¶5}  In his first assignment of error, Drummond contends that his underlying conviction for failure to appear was unconstitutional because he received ineffective assistance of counsel at the plea hearing.  Drummond sets forth the following "Issue presented for review":

1.    Counsel's performance at the plea hearing was unreasonable because the Pretrial Release Order lacked a personal recognizance release condition and FTA liability required violation of a recognizance condition.  And Drummond was prejudiced because there is a reasonable probability he would have proceeded to trial when the Pretrial Release Order lacked a recognizance condition to violate.

The State responds by arguing that "the majority of Appellant's argument is rooted in a misunderstanding of the actual bond form in this case controlling the failure to appeal conviction."  The State argues that contrary to Drummond's assertions, "[t]he record is clear as to the issuance of an own recognizance bond and Appellant's subsequent failure to appear."

{¶6} However, because Drummond's argument challenges his underlying conviction for failure to appear and because we have administratively denied Drummond's motion for leave to file a delayed appeal from his underlying convictions and sentences, Drummond's first assignment of error must be stricken from his brief. Accordingly, we will not address it.

## ASSIGNMENT OF ERROR II

{¶7} In his second assignment of error, Drummond contends that the trial court erred by imposing consecutive sentences. He raises several arguments in support of this assignment of error, which will be set forth in more detail below. The State, on the other hand, argues that the imposition of consecutive sentences was appropriate in this case and that the trial court made the required findings for imposing consecutive sentences. The State notes that Drummond not only absconded from supervision for over a year, but that he also failed to comply with required programming, failed to report to the probation department, and refused urine screens.

## Standard of Review

{¶8} "When reviewing felony sentences appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2)." *State v. Johnson*, 4th Dist. Adams No. 19CA1082, 2019-Ohio-3479, ¶ 7, citing *State v. Marcum*, 146 Ohio

St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 7.  R.C. 2953.08(G)(2) states as

follows:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶9}  "Clear and convincing evidence is 'that measure or degree of proof

which * * * will produce in the mind of the trier of facts a firm belief or conviction

as to the facts sought to be established.' "  *State ex rel. Husted v. Brunner*, 123

Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross v.*

*Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

This Court has explained as follows regarding the review of felony sentences:

> " '[R.C. 2953.08(G)(2)] does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings.  In other words, the restriction is on the appellate court, not the trial judge.  This is an extremely deferential standard of review.' "

*State v. Spangler*, 4th Dist. Athens No. 21CA17, 2023-Ohio-2003, ¶ 17, quoting

*State v. Pierce*, 4th Dist. Pickaway No. 18CA4, 2018-Ohio-4458, ¶ 8, in turn

quoting *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, 992

N.E.2d 453, ¶ 20-21.

Consecutive Sentences

{¶10} There is a statutory presumption in favor of concurrent sentences

pursuant to R.C. 2929.41(A).  In order to justify the imposition of consecutive

terms of imprisonment, "a trial court must make the findings mandated by R.C.

2929.14(C)(4) at the sentencing hearing and incorporate its findings into its

sentencing entry, but the court has no obligation to state reasons to support its

findings."  *State v. Blair*, 4th Dist. Athens No. 18CA24, 2019-Ohio-2768, ¶ 52,

citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659,

syllabus.  This Court explained as follows in *State v. Cottrill* regarding the findings

required to support the imposition of consecutive sentences:

> "Under the tripartite procedure set forth in R.C.
> 2929.14(C)(4), prior to imposing consecutive sentences a trial
> court must find that: (1) consecutive sentences are necessary to
> protect the public from future crime or to punish the offender; (2)
> consecutive sentences are not disproportionate to the seriousness
> of the offender's conduct and to the danger the offender poses to
> the public; and (3) that one of three circumstances specified in
> the statute applies."

*State v. Cottrill*, 4th Dist. Ross No. 20CA3704, 2020-Ohio-7033, ¶ 14, quoting

*State v. Baker*, 4th Dist. Athens No. 13CA18, 2014-Ohio-1967, ¶ 35-36.

{¶11} Further, as we explained in *Cottrill*, the three circumstances are as follows:

> "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

*Cottrill* at ¶ 14, quoting R.C. 2929.14(C)(4)(a)-(c). Any findings required by the applicable statutory sentencing provisions and made by the sentencing court, such as those contained in R.C. 2929.14(C)(4)(c), must still be supported by the record. *State v. Gray*, 4th Dist. Scioto No. 18CA3857, 2019-Ohio-5317, ¶ 21.

{¶12} In *State v. Gwynne*, -- Ohio St.3d --, 2022-Ohio-4607, -- N.E.3d --, ¶ 1-2 ("*Gwynne IV*"), a majority of the Court held that "the findings required by R.C. 2929.14(C)(4) to impose consecutive prison sentences on an offender 'must be made in consideration of the aggregate term to be imposed.' " *State v. Gwynne*, --

Ohio St.3d --, 2023-Ohio-3851, -- N.E.3d --, ¶ 2 ("*Gwynne V*"), citing *Gwynne IV*,

*supra*. Additionally, in *Gwynne IV*, the Court concluded that

> appellate review of consecutive sentences did not require appellate courts to defer to the sentencing court's findings; rather, this court explained that "appellate courts * * * review the record de novo and decide whether the record clearly and convincingly does not support the consecutive-sentence findings."

*Gwynne V* at ¶ 2, quoting *Gwynne IV* at ¶ 1.

However, the Supreme Court of Ohio has since departed from its prior reasoning in

*Gwynne IV* and has now clearly held as follows:

> The plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record.

*Gwynne V* at ¶ 5.

{¶13} Thus, the Court has now clearly affirmed that an appellate court's

application of a de novo standard of review to consecutive-sentence findings "is

contrary to the plain language of R.C. 2953.08(G)(2)." *Gwynne V* at ¶ 16. This is

because "[d]e novo review of a trial court's consecutive-sentence findings is

simply incongruous with the deference that the legislature stated an appellate court

must give those statutory findings in the statutory language of R.C.

2953.08(G)(2)." *Id.*

Imposition of Consecutive Sentences Following
Revocation of Community Control

{¶14} In *State v. Marcum*, 4th Dist. Hocking No. 19CA7, 2020-Ohio-3962, ¶ 9, we explained that under appropriate circumstances, such as when a prison term is not required, R.C. 2929.15 permits a court to impose community control sanctions as a sentence for a felony offense. We further noted that trial courts have three options " 'for punishing offenders who violate community control sanctions.' " *Id.*, quoting *State v. McPherson*, 142 Ohio App.3d 274, 278, 755 N.E.2d 426 (4th Dist. 2001) and R.C. 2929.15(B)(1)(a)-(c). The first option is to "lengthen the term of the community control sanction[.]" *Id.* The second option is to "impose a more restrictive community control sanction[.]" *Id.* The third option is to "impose a prison term on the offender[.]" *Id.*

{¶15} In *Marcum*, we observed that trial courts are "not prohibited, per se, from sentencing an offender to concurrent terms of community control but consecutive prison terms as a possible punishment for violating those community control sanctions." *Marcum* at ¶ 10, citing *State v. Dusek*, 4th Dist. Hocking No. 18CA18, 2019-Ohio-3477, ¶ 4 (the trial court imposed concurrent community control sanctions but notified appellant that violating those sanctions could result in consecutive prison terms). As we observed in *Marcum*, "[t]his is primarily because ' "* * * when the defendant violates community control, the court imposes an appropriate sanction for that misconduct, but not for the original or underlying

crime." ' " *Marcum* at fn. 1, quoting *State v. Hart*, 4th Dist. Athens No. 13CA8, 2014-Ohio-3733, ¶ 23, in turn quoting *State v. Beverly*, 4th Dist. Ross No. 01CA2603, 2002-Ohio-118, *3.

Legal Analysis

{¶16} Drummond now essentially contends on appeal that the trial court improperly imposed consecutive sentences at his original sentencing hearing instead of at the sentencing hearing that followed the revocation of his community control. Drummond argues that such a determination by the trial court at the original sentencing hearing constituted an unlawful predetermination of what his sentence would be if he violated his community control. This argument seems to be based upon the fact that prison terms imposed for a violation of community control should be designed to punish the violation and not underlying criminal offense. *See Marcum, supra*, at fn.1.

{¶17} Drummond raises additional arguments related to the trial court's imposition of consecutive sentences. Drummond argues that the trial court purported to impose consecutive prison terms in the event of a future community control violation while sentencing him at his original sentencing hearing and as a result, that the trial court's consecutive sentence analysis was obscured at the sentencing hearing that took place after the community control revocation. More specifically, Drummond argues that it cannot be discerned from the record whether

the trial court believed it had the discretion regarding whether or not to impose consecutive sentences at the time when community control was violated, or whether it believed it had already imposed consecutive sentences when it originally sentenced Drummond for his underlying felony convictions.

{¶18} Drummond also argues that the trial court made incomplete consecutive sentence findings during the revocation hearing. More specifically, he claims that the trial court added an "awaiting trial" finding in the sentencing order that it did not make orally at the sentencing hearing. Finally, Drummond argues that the record fails to support the trial court's findings that a 36-month aggregate prison term for the failure to appear and motor vehicle theft convictions were proportionate to the seriousness of his conduct. Drummond's argument, in part, is based upon his claim that this conviction for failure to appear was invalid.

{¶19} A review of the record before us reveals that after Drummond admitted to violating the terms of his community control, the trial court chose option three, which was to impose previously reserved prison terms upon Drummond for the community control violations. The record further reveals that at the original sentencing hearing in 2021, the trial court not only notified Drummond that he *could* be sentenced to consecutive prison terms in the event he violated his community control, the trial court all but promised him that he *would* be sentenced to consecutive prison terms for a violation of his community control.

A review of the original sentencing hearing transcript reveals that this was due, in part, to the fact that Drummond's plea agreement included a sentencing recommendation from the State, which incorporated Drummond's agreement that he would be sentenced to consecutive prison terms in the event of a violation of his community control. Despite these facts, we conclude that it is clear after reviewing the community control violation sentencing transcript that the trial court believed it had discretion in determining how the violations should be punished.

{¶20} Although the trial court did make consecutive findings when it originally sentenced Drummond on his underlying felony offenses, it is clear from the record that the trial court only imposed terms of community control at that time. In fact, this case is procedurally very similar to what occurred in *State v. Marcum, supra*. In *Marcum*, the trial court sentenced the appellant to terms of community control, but informed him that if he violated the terms of community control, the reserved prison terms would be ordered to be served consecutively. *Marcum* at ¶ 4. A similar situation was examined in *State v. Howard*, 162 Ohio St.3d 314, 2020-Ohio-3195, 165 N.E.3d 1088. Howard was originally sentenced to terms of community control but was notified during the original sentencing hearing that consecutive prison terms would be imposed in the event of a violation. *Howard* at ¶ 5. Despite the fact that consecutive, reserved prison terms appear to have been "predetermined" in a sense at the original sentencing hearing, the

Supreme Court of Ohio in *Howard* found that the trial court had provided the appellant with "proper notice at his original sentencing hearing of the specific prison terms he could face if he were to violate his community-control conditions." *Id.* at ¶ 15. Further, the Court found no error with respect to the fact that the trial court ultimately "imposed the exact prison terms that it had provided Howard notice of at his initial sentencing hearing." *Id.* at ¶ 22. The Court found that even though the exact prison terms were imposed, "the court performed more than an administrative function at the revocation hearing and did not merely impose a predetermined sentence." *Id.* at ¶ 25, citing *State v. Jackson*, 150 Ohio St.3d 362, 2016-Ohio-8127, 81 N.E.3d 1237, ¶ 13.

{¶21} Here, it is also clear that the trial court performed more than an administrative function of simply imposing predetermined consecutive sentences. The hearing transcripts from the revocation hearing indicate that the trial court engaged Drummond in conversation regarding its ability to impose consecutive sentences, but it notified him that there were alternatives, such as extending community control or imposing more restrictions. The court also ordered an updated presentence investigation report and reminded Drummond prior to the sentencing hearing that he needed "to continue to be compliant." Unfortunately, between the initial hearing when Drummond entered admissions to the violations

and the sentencing hearing, Drummond had positive drug screens for methamphetamines on three separate dates.

{¶22}  The *Howard* Court acknowledged that making consecutive sentence findings at an original sentencing hearing while simultaneously imposing terms of community control was inconsistent, but ultimately reasoned as follows:

> [A] finding during the initial sentencing hearing that consecutive sentences were necessary to punish Howard or to protect the public from future crime would be inconsistent with the court's determination that a community-control sentence would not demean the seriousness of Howard's offenses.  But even if the court had made the consecutive-sentences findings at Howard's initial sentencing hearing, R.C.  2929.14(C)(4) becomes relevant when "multiple prison terms are *imposed*." (Emphasis added.)

*Howard* at ¶ 26-27.

Thus, although the *Howard* Court ultimately reversed the appellate decision and remanded it, the only reason it did so was because the trial court only made two of the three necessary consecutive sentence findings at the community control revocation sentencing hearing.  *Id.* at ¶ 27.  The Court apparently found no harm with the fact that there was consecutive sentencing language included at the original sentencing stage when Howard was initially sentenced to community control.

{¶23}  Based upon the foregoing reasoning, we conclude that even though the trial court appears to have promised Drummond that consecutive prison terms

would be imposed in the event of a community control violation and even though

the trial court made consecutive sentence findings at the time it originally

sentenced Drummond to community control, such errors were harmless as long as

the trial court made the necessary findings at the time it actually imposed

consecutive sentences for the community control violations, which it did.  We find

no merit to Drummond's argument that the trial court made incomplete

consecutive sentence findings at the revocation hearing and then added an

"awaiting-trial" finding to the revocation judgment entry.

{¶24}  A review of the sentencing hearing transcript from the sentencing

hearing that took place after community control was revoked reveals that the trial

court made the necessary findings to support the imposition of consecutive

sentences.  The trial court found that consecutive sentences were necessary to

protect the public from future crime and that they were not disproportionate to the

seriousness of the offender's conduct.  The trial court also found that "the

offender's history of criminal conduct demonstrates a consecutive sentence is

necessary to protect the public from future crime."  Elsewhere during the hearing,

in discussing the seriousness and recidivism factors, the trial court found that

Drummond "was on bond in 20CR18 when he committed 20CR208."  In our view,

this finding is equivalent to finding that Drummond committed one of the offenses

while he was awaiting trial or sentencing.  The trial court further found that

Drummond had served a prior prison term, had not responded favorably to sanctions—hence the community control violations— and that he had demonstrated "a pattern of substance abuse and a refusal to remain in treatment."

{¶25} In light of the foregoing, we conclude that the trial court made the necessary findings to impose consecutive sentences and that the findings were made orally on the record during the sentencing hearing and then properly incorporated into the sentencing entry. Further, we cannot clearly and convincingly conclude that the findings were not supported by the record. Moreover, we conclude that the record clearly and convincingly supports the imposition of the aggregate sentence that was imposed, and we find that the aggregate sentence is necessary, proportionate and arises from sufficiently aggravated circumstances to overcome the statutory presumption for the imposition of concurrent sentences.

{¶26} Again, Drummond primarily bases his argument that the consecutive sentence findings were not supported by the record upon the premise that his underlying conviction for failure to appear was invalid. However, his argument challenging the validity of that conviction has been stricken from his appellate brief. Thus, that conviction stands for purposes of this appeal. As set forth above, and in light of the facts before us, we find no merit to Drummond's argument that the trial court's consecutive sentences were not supported by the record.

Accordingly, we find no merit in any of the arguments raised under Drummond's second assignment of error and it is therefore overruled.

## ASSIGNMENT OF ERROR III

{¶27} In his third assignment of error, Drummond contends that it is unlawful to deny his appellate counsel a copy of his presentence investigation report (hereinafter "PSI") to investigate, research, and present issues for appeal. He argues that his appellate counsel was entitled to obtain a copy of the PSI for purposes of appeal under both R.C. 2951.03(D)(1) and R.C. 2953.08 and that Gallia County's policy allowing him to view the PSI in person, but denying him a copy of the PSI, is contrary to law. He alternatively argues that if this Court rejects his statutory claims that his appellate counsel is entitled to a copy of the PSI, that the denial of his request for a copy of the PSI is unconstitutional under the Ohio Equal Protection clause in that it creates a classification between defense counsel and the trial court, probation officers, Ohio Department of Rehabilitations and Corrections staff, law enforcement, and treatment providers, who are all entitled to copies of the PSI under R.C. 2951.03(A)(2)-(3). He argues that such a classification is "over-inclusive, irrational, and thereby unconstitutional."

{¶28} The State responds by arguing that although defense counsel and appellate counsel are entitled to review the PSI prior to sentencing and for purposes of appeal, appellate counsel's argument that he is entitled to a copy of the

PSI is not supported by the law.  The State further directs our attention to the fact

that appellate counsel here was not denied access to the PSI and it also references

the fact that Gallia County's practices and procedures governing counsel's access

to the PSI were consistent with "state-wide practices and the Ohio Revised Code."

The State further argues there was no constitutional error in Gallia County's

handling of the matter.

Legal Analysis

{¶29}  Drummond asserts that in order to inspect the PSI in person in Gallia

County, his counsel would have had to travel two and one-half hours each way,

resulting in a five hour round trip.  He further asserts that Gallia County limits

appellate representation by appointed counsel to a total of 20 hours and that

making the trip to view the PSI in person would have taken up one-fourth of the

time allotted for his case.  As a result, it appears that counsel elected not to devote

the time needed for travel and instead decided to forego review of the PSI when his

request for a copy was denied.

{¶30}  PSIs are addressed in both Crim.R. 32.2 and R.C. 2951.03.  Crim.R.

32.2 provides as follows:

> Unless the defendant and the prosecutor in the case agree
> to waive the presentence investigation report, the court shall, in
> felony cases, order a presentence investigation and report before
> imposing community control sanctions or granting probation.
> The court may order a presentence investigation report
> notwithstanding the agreement to waive the report. In

misdemeanor cases the court may order a presentence investigation before granting probation.

Likewise, R.C. 2951.03(A)(1) provides, in pertinent part, that "no person who has been convicted of or pleaded guilty to a felony shall be placed under a community control sanction until a written presentence investigation report has been considered by the court."

{¶31} R.C. 2951.03 permits access to these reports only in certain circumstances. For example, R.C. 2951.03(B)(1) states that "the court, at a reasonable time before imposing sentence, shall permit the defendant or the defendant's counsel to read the report." R.C. 2951.03 further provides in section (B)(2) as follows:

> Prior to sentencing, the court shall permit the defendant and the defendant's counsel to comment on the presentence investigation report and, in its discretion, may permit the defendant and the defendant's counsel to introduce testimony or other information that relates to any alleged factual inaccuracy contained in the report.

{¶32} R.C. 2951.03(D)(1) addresses when a defendant and/or his counsel may seek access to the PSI, the contents of which is "confidential information" and "not a public record." For example, R.C. 2951.03(D)(1) states as follows:

> The court, an appellate court, authorized probation officers, investigators, and court personnel, the defendant, the defendant's counsel, the prosecutor who is handling the prosecution of the case against the defendant, and authorized personnel of an institution to which the defendant is committed may inspect, receive copies of, retain copies of, and use a

> presence investigation report or a written or oral summary of a presence investigation only for the purposes of or only as authorized by Criminal Rule 32.2 or this section, division (F)(1) of section 2953.08, section 2947.06, or another section of the Revised Code.

However, R.C. 2951.03(D)(2) further provides that

> Immediately following the imposition of sentence upon the defendant, the defendant or the defendant's counsel and the prosecutor shall return to the court all copies of a presence investigation report and of any written summary of a presence investigation report or part of a presence investigation report that the court made available to the defendant or the defendant's counsel and to the prosecutor pursuant to this section.

{¶33} In 2014, the Supreme Court of Ohio agreed to address a certified conflict on the question of " '[w]hether, pursuant to R.C. 2951.03, newly-appointed appellate counsel is entitled to obtain a copy of the defendant's presence investigation report.' " *State v. Johnson*, 138 Ohio St.3d 282, 2014-Ohio-770, 6 N.E.3d 38, ¶ 1 (hereinafter "*Johnson*"), quoting *State v. Johnson*, 135 Ohio St.3d 1411, 2013-Ohio-1622, 986 N.E.2d 28.[1]

{¶34} In accepting the case, the Court stated that "the issue is whether appellate counsel who was not trial counsel may obtain a copy of the presence investigation report for purposes of representing Johnson on appeal." *Johnson* at ¶ 7. The Court first determined that the term " 'defendant's counsel' as used in R.C.

---

[1] The Twelfth District certified the conflict between *State v. Johnson*, 12th Dist. Butler No. CA2011-11-212, 2014-Ohio-3776 and *State v. Jordan*, 4th Dist. Scioto No. 03CA2878, 2004-Ohio-2111.

2951.03(D)(1) [encompassed] both a defendant's trial counsel and a defendant's appellate counsel." *Johnson* at ¶ 2. The Court ultimately answered the certified question in the affirmative, but only ordered on remand that the defendant's appellate counsel be provided "access to the report subject to similar restrictions as contained in R.C. 2951.03 and 2953.08(F)(1) and any further directives of the appellate court." *Id.* at ¶ 2, 15. The Court's full holding stated as follows:

> Because of concerns for due process and the right to effective assistance of counsel on an appeal, and because the term "defendant's counsel" as used in R.C. 2951.03(D)(1) includes both a defendant's trial counsel and a defendant's appellate counsel, we answer the certified question in the affirmative and permit newly appointed appellate counsel to have access to a presentence investigation report upon a proper showing therefor, subject to similar restrictions as contained in R.C. 2951.03 and 2953.08(F)(1) and any further directives of the appellate court.

*Id.* at ¶ 14.

{¶35} Relying on *Johnson*, this Court recently determined in *State v. Jackson*, 4th Dist. Gallia No. 22CA8, --Ohio--, that "[u]nder the relevant statutes and *Johnson*, access to the PSI is very limited." *Jackson* at ¶ 45. We further determined that "*Johnson* permits appellate counsel to have access to a defendant's PSI, but does not permit unlimited access[]" and that "[t]his court may not enlarge the *Johnson* holding." *Id.* We ultimately held in *Jackson* "that R.C. 2951.03 does not permit appellant to retain a copy of the presentence investigation report." *Id.*

{¶36} Jackson was represented on appeal by the same counsel who represents Drummond on appeal. Further, the arguments regarding appellate counsel's access to the PSI report in *Jackson* are identical to the arguments raised sub judice and both cases originate from Gallia County. Thus, both involve the same court's practices and policies with respect to appellate counsel's access to the PSI report. As this Court expressed in *Jackson*, "we certainly understand and appreciate appellate counsel's frustration," but "as an intermediate appellate court we are obligated to follow Supreme Court of Ohio decisions." *Jackson* at ¶ 45. Accordingly, based upon the Supreme Court of Ohio's holding in *Johnson* as well as this Court's recent reasoning in *Jackson*, the statutory claims raised in Drummond's third assignment of error are overruled.

{¶37} Further, with respect to Drummond's alternative claims which assert constitutional and equal protection violations, the Supreme Court of Ohio has explained that

> the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court. *See State v. Woodards* (1966), 6 Ohio St.2d 14, 215 N.E.2d 568 [35 O.O.2d 8]. This rule applies both to appellant's claim that the statute is unconstitutionally vague on its face and to his claim that the trial court interpreted the statute in such a way as to render the statute unconstitutionally vague. Both claims were apparent but yet not made at the trial court level.

*State v. Awan*, 22 Ohio St.3d 120, 122-123, 489 N.E.2d 277 (1986).

Because Drummond's trial counsel was mandated to return the copy of the PSI at trial and because R.C. 2951.03(D)(2) did not require other personnel/departments who had a copy of the PSI to return it, this challenge could have been raised at trial, but it was not. *See State v. Stutes*, 4th Dist. Gallia Nos. 22CA6, 22CA7, 2023-Ohio-4582, ¶ 45. Because Drummond's constitutional challenge to R.C. 2951.03 could have been raised at the trial court level, but was not, we decline to address it for the first time on appeal.

{¶38} Having stricken Drummond's first assignment of error, and having found no merit to Drummond's second and third assignments of error, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J., & Hess, J., Concur in Judgment and Opinion.

For the Court,

_____

Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**