[Cite as *State v. Jackson*, 2026-Ohio-1486.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 25CA4120 |
| | : | |
| v. | : | |
| | : | DECISION AND JUDGMENT |
| WALTER JACKSON, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Brian T. Goldberg, Cincinnati, Ohio, for appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, Jay S. Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____

Smith, P.J.

{¶1} Walter Jackson, "appellant," appeals the May 15, 2023 judgment entry of the Scioto County Court of Common Pleas. Appellant was convicted of multiple drug and related offenses at a jury trial. Herein, appellant raises five assignments of error asserting that his trial attorney rendered ineffective assistance of counsel and otherwise challenging his convictions and sentence. Based on our review of the record, we find no merit to appellant's assignments of error. Accordingly, all are overruled and the judgment of the trial court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} Subsequent to appellant's jury trial wherein he was convicted of multiple drug and related criminal offenses, he appealed to this court. However, we found that we had no jurisdiction to consider the merits of the appeal due to lack of a final appealable order. *See State v. Jackson*, 2025-Ohio-322, "*Jackson I.*" We set forth the factual and procedural background as previously set forth in *Jackson I* at paragraphs three through seven.

{¶3} On August 2, 2022, an indictment was filed charging appellant with eight felony drug-related counts. Appellant was arrested on those charges, retained counsel, was arraigned, and pled not guilty. The matter then proceeded through discovery.

{¶4} Subsequently, on November 22, 2022, a second indictment was filed under the same case number charging appellant with 12 felony counts as follows:[1]

Count One:

Trafficking in a Fentanyl-Related Compound, in violation of R.C. 2925.03(A)(2) and (C)(9)(g), a felony of the first degree (also containing R.C. 2941.141(A) and 2941.1417(A) firearm specifications);

---

[1] Some of the counts contained in the second indictment were the same as those contained in the first indictment, some were different, and there were four new counts.

Count Two:

Possession of a Fentanyl-Related Compound, in violation of R.C. 2925.11(A) and (C)(11)(f), a felony of the first degree (also containing R.C. 2941.141(A) and 2941.1417(A) firearm specifications);

Count Three:

Trafficking in a Fentanyl-Related Compound, in violation of R.C. 2925.03(A)(2) and (C)(9)(e), a felony of the second degree (also containing R.C. 2941.141(A) and 2941.1417(A) firearm specifications);

Count Four:

Possession of a Fentanyl-Related Compound, in violation of R.C. 2925.11(A) and (C)(11)(d), a felony of the second degree (also containing R.C. 2941.141(A) and 2941.1417(A) firearm specifications);

Count Five:

Trafficking in Cocaine, in violation of R.C. 2925.03(A)(2) and (C)(4)(d), a felony of the third degree (also containing R.C. 2941.141(A) and 2941.1417(A) firearm specifications);

Count Six:

Possession of Cocaine, in violation of R.C. 2925.11(A) and (C)(4)(c), a felony of the third degree (also containing R.C. 2941.141(A) and 2941.1417(A) firearm specifications);

Count Seven:

Aggravated Trafficking in Drugs, in violation of R.C. 2925.03(A)(2) and (C)(1)(c), a felony of the third degree (also containing R.C. 2941.141(A) and 2941.1417(A) firearm specifications);

Count Eight:

Aggravated Possession of Drugs, in violation of R.C. 2925.11(A) and (C)(1))(b), a felony of the third degree (also containing R.C. 2941.141(A) and 2941.1417(A) firearm specifications);

Count Nine:

Having Weapons While Under Disability, in violation of R.C. 2923.13(A)(3) and (B), a felony of the third degree (also containing a R.C. 2941.1417(A) firearm specification);

Count Ten:

Having Weapons While Under Disability, in violation of R.C. 2923.13(A)(2) and (B), a felony of the third degree (also containing a R.C. 2941.1417(A) firearm specification);

Count Eleven:

Improperly Handling Firearms in a Motor Vehicle, in violation of R.C. 2923.16(B) and (I), a felony of the fourth degree (also containing a R.C. 2941.1417(A) firearm specification); and

Count Twelve:

Possessing Criminal Tools, in violation of R.C. 2923.24(A) and (C), a felony of the fifth degree.

{¶5} Appellant was again arraigned and pled not guilty to the charges, but this time he was represented by appointed counsel, who had replaced his previously retained counsel. During the second arraignment hearing and the pretrial hearings conducted thereafter, the second indictment was referred to as a superseding indictment, and it appears the parties only discussed the counts contained in the second indictment.

{¶6} The matter thereafter proceeded to trial on March 13, 2023. Appellant was found guilty of all 12 counts contained in the second indictment, along with 8 firearm specifications. After merging several of the counts for purposes of sentencing, appellant received an aggregate prison sentence of 25 years and 6 months to an indefinite term of 31 years, with 18 years being mandatory. The trial court issued a judgment entry on May 15, 2023 imposing sentence. The entry was timely appealed, but dismissed as discussed in *Jackson I*.

{¶7} The appeal has now been perfected, and the May 15, 2023 judgment entry is properly before us. Additional facts are set forth below, where relevant.

ASSIGNMENTS OF ERROR

I.   THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. JACKSON'S SIXTH AMENDMENT RIGHTS BY ENTERING JUDGMENT OF CONVICTION AFTER A TRIAL AT WHICH HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE.

II.  THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. JACKSON BY CONDUCTING THE TRIAL WITHOUT HIM BEING PRESENT.

III. THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. JACKSON BY FAILING TO MERGE ALLIED OFFENSES OF SIMILAR IMPORT AT THE TIME OF SENTENCING.

IV.  THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES WHEN THE RECORD DID NOT SUPPORT THE FINDINGS MADE BY THE TRIAL COURT TO IMPOSE CONSECUTIVE SENTENCES.

V.   MR. JACKSON'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

Assignment of Error One-Ineffective Assistance of Counsel

Standard of Review

{¶8} The Sixth Amendment to the United States Constitution and

Article I, Section 10 of the Ohio Constitution provide that defendants in all

criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); accord *Hinton v. Alabama,* 571 U.S. 263, 272 (2014) (the Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence"). *See State v. Billiter,* 2025-Ohio-4693 (4th Dist.), at ¶ 53.

{¶9} To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) trial counsel's performance was deficient and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *E.g., Strickland,* 466 U.S. at 687; *State v. Myers*, 2018-Ohio-1903, ¶ 183; *State v. Powell,* 2012-Ohio-2577, ¶ 85. "Failure to establish either element is fatal to the claim." *State v. Jones*, 2008-Ohio-968, ¶ 14 (4th Dist.). Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal,* 87 Ohio St.3d 378, 389 (2000) (a defendant's failure to satisfy one of the ineffective-assistance-of-counsel elements "negates a court's need to consider the other"). *See also Billiter,* at ¶ 53.

{¶10} The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.' " *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010), quoting *Strickland*, 466 U.S. at 688; accord *Hinton*, 571 U.S. at 273. *See also Billiter,* at ¶ 54. Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." (Citations omitted.) *State v. Conway*, 2006-Ohio-2815, ¶ 95. Furthermore, " '[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.' " *Hinton,* 571 U.S. at 273, quoting *Strickland,* 466 U.S. at 688.

{¶11} Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689; *see Billiter*, at ¶ 55. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. Additionally, "[a] properly licensed attorney is presumed

to execute his duties in an ethical and competent manner." *State v. Taylor,* 2008-Ohio-482, ¶ 10 (4th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland*, 466 U.S. at 687; e.g., *State v. Gondor,* 2006-Ohio-6679, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156 (1988).

{¶12} To establish prejudice, a defendant must demonstrate " 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Hinton*, 571 U.S. at 275, quoting *Strickland,* 466 U.S. at 694; e.g., *State v. Short*, 2011-Ohio-3641, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus; *accord State v. Spaulding*, 2016-Ohio-8126, ¶ 91 (prejudice component requires a "but for" analysis). " '[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' " *Hinton*, 571 U.S. at 275, quoting *Strickland,* 466 U.S. at 695.

{¶13} On the prejudice prong, the defendant must show there is a reasonable probability the result of the proceedings would have been

different but for the deficient performance; a reasonable probability is one

"sufficient to undermine confidence in the outcome." *State v. Baker,* 2023-

Ohio-2061, at ¶ 24 (7th Dist.). Lesser tests of prejudice have been rejected:

"It is not enough for the defendant to show that the errors had some

conceivable effect on the outcome of the proceeding." *Id*. at 142, fn. 1,

quoting *Strickland*, 466 U.S. at 693. Prejudice from defective representation

justifies reversal only where the results were unreliable or the proceeding

was fundamentally unfair due to the performance of trial counsel. *Carter,*

72 Ohio St.3d at 558, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

{¶14} Furthermore, courts ordinarily may not simply presume the

existence of prejudice but, instead, must require a defendant to affirmatively

establish prejudice. *E.g., State v. Clark*, 2003-Ohio-1707, ¶ 22 (4th Dist.);

*see Billiter,* at ¶ 57. Additionally, we have repeatedly recognized that

speculation is insufficient to establish the prejudice component of an

ineffective assistance of counsel claim. *E.g., State v. Tabor,* 2017-Ohio-

8656, ¶ 34 (4th Dist.); *State v. Leonard,* 2009-Ohio-6191, ¶ 68 (4th Dist.);

*accord State v. Powell,* 2012-Ohio-2577, ¶ 86 (a purely speculative

argument cannot serve as the basis for an ineffectiveness claim).

{¶15} If there was no prejudice, then there is no need to review

whether the performance was deficient and vice versa. *State v. Madrigal,* 87

Ohio St.3d 378, 389 (2000). "There is no reason for a court deciding an ineffective assistance claim * * * to address both components of the inquiry if the defendant makes an insufficient showing on one." *Bradley*, 42 Ohio St.3d at 143, quoting *Strickland,* 466 U.S. at 697. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id*.

Legal Analysis

{¶16} Appellant raises several issues under the first assignment of error.

Issue One-Motion to Suppress

{¶17} Appellant argues that his trial counsel should have filed a motion to suppress challenging probable cause for the stop. Appellant points to Trooper Lewis's testimony that he stops a lot of rental vehicles, pays special attention to rental cars, and decided to follow appellant because his vehicle had Florida plates. Appellant points out that when Trooper Lewis decided to follow him, he had not observed any traffic violations.

{¶18} "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches

and seizures." *State v. Duncan*, 2025-Ohio-1504, ¶ 9 (4th Dist.), quoting *State v. Emerson,* 2012-Ohio-5047, ¶ 15.  The Supreme Court of Ohio has held that these provisions provide the same protection in felony cases.  *State v. Hawkins,* 2019-Ohio-4210, ¶ 18 (4th Dist.).  "This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion at trial of evidence obtained from an unreasonable search and seizure."  *State v. Petty*, 2019-Ohio-4241, ¶ 11 (4th Dist.).

{¶19} " '[S]earches [and seizures] conducted outside the judicial process, without prior approval by [a] judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' "  (Citations omitted.).  *State v. Conley,* 2019-Ohio-4172, ¶ 17 (4th Dist.), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967).  "Once a defendant demonstrates that he or she was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible."  *State v. Dorsey*, 2019-Ohio-3478, ¶ 13 (4th Dist.).  In this case, Trooper Lewis acted without a warrant in initiating the traffic stop at issue.

{¶20} The record before us indicates that this case involved an investigatory stop.  Investigatory stops "must be supported by a reasonable,

articulable suspicion that the driver has, is, or is about to commit a crime,

including a minor traffic violation." *Petty* at ¶ 12, citing *State v. Hudson*,

2018-Ohio-2717, ¶ 14 (4th Dist.), and *State v. Fowler*, 2018-Ohio-241, ¶ 16

(4th Dist.), in turn citing *United States v. Williams*, 525 Fed.Appx. 330, 332

(6th Cir. 2013) and *Florida v. Royer*, 460 U.S. 491, 501-507 (1983). In

*Petty*, *supra*, we explained as follows:

> "To justify a traffic stop based upon reasonable suspicion, the officer must be able to articulate specific facts that would warrant a person of reasonable caution to believe that the driver has committed, or is committing, a crime, including a minor traffic violation." *State v. Taylor,* 2016-Ohio-1231, ¶ 18 (4th Dist.). The existence of reasonable suspicion depends on whether an objectively reasonable police officer would believe that the driver's conduct constituted a traffic violation based on the totality of the circumstances known to the officer at the time of the stop. *Id*.

{¶21} Additionally, a police officer may stop the driver of a vehicle

after observing even a de minimis violation of traffic laws. *See State v.*

*Williams*, 2014-Ohio-4897, ¶ 9 (4th Dist.), citing *Whren v. United States*,

517 U.S. 806 (1996), and *Dayton v. Erickson,* 76 Ohio St.3d 3 (1996),

syllabus. "[A] traffic stop with the proper standard of evidence is valid

regardless of the officer's underlying ulterior motives as the test is merely

whether the officer 'could' have performed the act complained of; pretext is

irrelevant if the action complained of was permissible." *See State v.*

*Koczwara,* 2014-Ohio-1946, ¶ 22 (7th Dist.), citing *Erickson* at 7 and 11, 665 N.E.2d 1091.

*Petty* at ¶ 12-13.

{¶22} Furthermore, " ' "[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." ' " *State v. Strong,* 2019-Ohio-2888, ¶ 19 (4th Dist.), quoting *State v. Eatmon*, 2013-Ohio-4812, ¶ 13 (4th Dist.), in turn quoting *State v. Freeman,* 64 Ohio St.2d 291, paragraph one of the syllabus (1980). *See Duncan, supra* at ¶ 13.  The totality of the circumstances approach " 'allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." ' " *Strong* at ¶ 19, quoting *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (overruled in part on separate grounds by *Davis v. Washington,* 547 U.S. 813 (2006), in turn quoting *U.S. v. Cortez,* 449 U.S. 411, 418 (1981).

{¶23} R.C. 4511.33(A)(1) governs rules for driving in marked lanes and requires that all vehicles "be driven, as nearly as is practicable entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."  A marked lanes violation constitutes a de minimis violation of

traffic law and provides justification for an investigatory stop.  *See State v. Alexander-Lindsey,* 2016-Ohio-3033, ¶ 11 (4th Dist.).

{¶24} Trooper Lewis's stop of the rental vehicle was a marked lanes violation.  Appellant acknowledges that pretextual stops are permissible but points out that an officer must observe an actual traffic violation.  Appellant argues that in this case, there is no evidence that a marked lanes violation occurred.  He claims because the stop was unlawful, the evidence found as a result should have been suppressed.  Appellant concludes that his counsel was ineffective for failure to file a motion to suppress.  For the reasons which follow, we disagree.

{¶25} At trial, Trooper Lewis testified he was working on Tuesday, June 28, 2022 , at approximately 11:00 p.m. when he observed appellant's vehicle, a Dodge Ram truck with Florida license plates which appeared to be a rental vehicle.  Because it caught his attention, he began to follow it southbound on U.S. 823.  Trooper Lewis identified and authenticated State's Exhibit 1, video camera footage from his cruiser.  Exhibit 1 contained three files, a front camera, body camera, and rear camera which captured his stop and investigation.  The prosecutor played the footage for the jury.  Trooper Lewis testified that he activated his overhead lights, got behind appellant's

vehicle, and observed the vehicle drifting over the fog line several times.

Specifically, he testified:

> So around Mile Post 14.4, which would be that slight righthand curve there in the roadway, he drifted over the white fog line there, and then as we came under the overpass for Fallen- - Lucasville…Fallen Timber, we - - he crossed over the white fog line on two separate occasions by a tire width on that- - which you can see that on the video, and I initiated a traffic stop for it…So, it'd be his right-side tires completely over the white fog line.

{¶26} Appellant concedes that the footage from the front camera, which captured the stop, clearly shows the rental vehicle touching the fog line. However, appellant contends it is not at all clear if the vehicle ever crossed completely over the fog line. The Supreme Court of Ohio has recently explained that although driving on or touching the white fog line does not constitute a marked lanes violation, the plain language of R.C. 4511.33(A)(1) " 'discourages or prohibits' a driver from crossing it." *State v. Turner*, 2020-Ohio-6773, ¶ 37.

{¶27} " 'Counsel's failure to file a motion to suppress is not per se ineffective assistance of counsel.' " *State v. Woodfork*, at ¶ 79, quoting *State v. Thompkins*, 2024-Ohio-4927, ¶ 66 (4th), citing *State v. Walters*, 2013-Ohio-772, ¶ 20 (4th Dist.), in turn citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). Rather, " 'the failure to file a motion to suppress amounts

to ineffective assistance of counsel only when the record demonstrates that the motion would have been successful if made.' " *Thompkins* at ¶ 66, quoting *State v. Resendiz*, 2009-Ohio-6177, ¶ 29 (12th Dist.).  Further, "we are to presume that trial counsel was effective if he could have reasonably decided that filing a motion to suppress would be a futile act, even if there is some evidence in the record to support a motion." *Walters* at ¶ 20, citing *Resendiz* at ¶ 29.

{¶28} Based upon our review of the front camera footage, it appears that appellant drove a tire-width across the fog line at least once, and it looks like he drove on the fog line a substantial period while being observed. Trooper Lewis, however, was the person observing appellant on the highway that night.  Trooper Lewis's trial testimony was detailed and clear that appellant drove over the fog line a tire-width at least twice.  Undoubtedly, this would have been Trooper Lewis's testimony at a suppression hearing on the matter.

{¶29} At a suppression hearing, the trier of fact would be free to discount or outright reject Trooper Lewis's testimony, and it would have been free to accept it.  *State v. Hammond,* 2019-Ohio-4253, ¶ 56 (4th Dist.); *State v. Wooten, supra*, at *4.  Based upon our review, we find that the trial court would most likely have concluded that under the totality of the

circumstances, there was probable cause to stop appellant's vehicle. Thus, had trial counsel chosen to file a suppression motion, it would most likely have been an unsuccessful and futile act. Thus, appellant cannot demonstrate deficient performance. In light of the foregoing, appellant's first argument is without merit.

## Issue Two - Objections

{¶30} Appellant argues that his counsel should have made several objections to irrelevant and unfairly prejudicial evidence relating to the troopers' testimonies about the marijuana they found in the rental vehicle and Trooper Lewis's description of appellant's clothing. Appellant argues that none of this testimony was relevant because he was not charged with trafficking or possession of marijuana. He contends that the marijuana and clothing testimony was offered only to urge the jurors to assume that " he is a drug dealer." He asserts that trial counsel's failure to object to this irrelevant and unfairly prejudicial evidence constituted ineffective assistance of counsel. For the reasons which follow, we disagree.

## Legal Analysis

{¶31} Both officers testified they smelled the odor of marijuana when they approached appellant's vehicle. Trooper Day testified that as soon as he opened the driver's door, he noticed the "strong odor of raw marijuana."

Trooper Lewis also testified that that he discovered a package of Swisher Sweets on the front passenger side. He opened the package and found marijuana residue mixed in with the tobacco.

{¶32} Trooper Day testified he could see "shake" lying all over the floor of the vehicle. He explained that "shake" is "bits and pieces of marijuana that fall when people are rolling marijuana into a cigar. Trooper Lewis described appellant as wearing a shirt with a logo that read: "Purple Hash" and had a marijuana leaf on each side.

{¶33} We have observed that "trial counsel's 'failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel.' " *State v. Platt*, 2024-Ohio-1330, at ¶ 93 (4th Dist.), quoting *State v. Conway*, 2006-Ohio-2815, ¶ 103; *accord State v. Sowell,* 2016-Ohio-8025, ¶ 144 (rejecting argument that failing to preserve error is inherently prejudicial and stating, "[i]t is not enough that an alleged error resulted in a disadvantage for an accused"). Instead, a defendant still must "show that any particular failure to object substantially violated an[ ] essential duty [and] was prejudicial." *State v. Fears,* 86 Ohio St.3d 329, 347(1999); *accord State v. Holloway*, 38 Ohio St.3d 239, 244 (1988).

{¶34} Additionally, trial counsel's decision to object, or not to object, may be a legitimate trial strategy or tactical decision for the reason that

" 'each potentially objectionable event could actually act to [the defendant]'s detriment.' " *State v. Johnson,* 2006-Ohio-6404, ¶ 140, quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (C.A. 6, 2006). *See Platt*, at ¶ 94. Thus,

> "any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice."

*Johnson* at ¶ 140, quoting *Lundgren,* 440 F.3d at 774; cf. *United States v. Cronic*, 466 U.S. 648, 656 (1984). We are also mindful that objections of counsel are subject to the trial court's broad discretion in the admission or exclusion of evidence. *See State v. Dodridge*, 2025-Ohio-2856, ¶ 44 (4th Dist.) (Citations omitted).

{¶35} In September 2016, medical marijuana was legalized in Ohio. R.C. Chapter 3796. Possession and recreational use of marijuana by adults at least 21 years of age became legal on December 7, 2023. R.C. Chapter 3780. In this appeal, appellant has not challenged the search of the rental car which was based on the testimony that there was a strong odor of raw marijuana. He has not asserted that the marijuana found was for medical purposes.

{¶36} In *State v. Moore*, 90 Ohio St. 3d 47, 49 (2000), the Supreme Court of Ohio held that the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. *See State v. Tomlin,* 2024-Ohio-4710, at ¶ 24 (5th Dist.). *See also State v. Thompkins,* 2024-Ohio-4927, at ¶ 69 (4th Dist.). While the continued validity of *Moore* may be challenged in the future, Trooper Lewis stopped appellant on June 28, 2022, over a year before the recreational-use law became effective. *See State v. Waters*, 2025-Ohio-4479, at ¶20 (1st Dist.). Thus, we see no reason why evidence of the marijuana found in the rental vehicle appellant drove would have been excluded as evidence at his trial, had trial counsel objected to this testimony.

{¶37} In *State v. Thompson*, 2020-Ohio-5257 (8th Dist.), Thompson challenged the admission of the marijuana seized during the stop under Evid.R. 404(B) and R.C. 2945.59, which "preclude admission of other acts evidence to prove a character trait in order to demonstrate conduct in conformity with that trait." *State v. Williams*, 2012-Ohio-5695, ¶ 16 (citations omitted). Pointing out that he was not charged with any marijuana-related offenses, Thompson claimed that the state admitted the raw marijuana solely to paint a portrait of him as a prolific drug dealer.

{¶38} The appellate court observed that even if the admission of the state's marijuana exhibits constituted error, it could only reverse the conviction if the court found that the error was not harmless error. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). In *Thompson,* defense counsel stipulated to the admission of body camera footage, which showed the police's recovery of raw marijuana from inside the vehicle. The court wrote:

> The marijuana is clearly visible in the video and the officers speak with each other about finding it. The admission of the video (without any redactions or edits) ensured that the jury would learn that Mr. Thompson possessed marijuana at the time of the stop. Since the jury appreciated the presence of marijuana on the scene through properly-admitted evidence, we find that the admission of the raw marijuana, if erroneous, would constitute harmless error on this record. In other words, it did not tell the jury anything that it did not already know.

{¶39} Similarly, defense counsel stipulated to admission of State's Exhibit 1, the traffic camera footage from Trooper Lewis's cruiser. In the video, the loose marijuana on the floor and the marijuana mixed in the Swisher Sweets package is plainly visible. Furthermore, when appellant exited the vehicle, his T-shirt with its logo of "Purple Hash" with a marijuana leaf on each side is also plainly visible.

{¶40} As in *Thompson,* the jury viewed the raw marijuana and appellant's clothing through properly-admitted video footage. Herein, even if trial counsel had objected to the testimony, it is not likely the objection would have been sustained. And, even if admission of the troopers' testimonies was erroneous, we cannot find that the error would have changed the outcome of appellant's trial.

{¶41} We view counsel's decision not to object as a matter of trial strategy. Accordingly, we do not find counsel's performance was deficient. This argument is also without merit.

Issue Three - Crim.R. 29

{¶42} At the conclusion of trial, appellant's attorney declined to make a Crim.R. 29 motion, even though the trial court specifically inquired about it. Appellant argues herein that there is no logical reason or trial strategy not to make a Crim. R. 29 motion. For the reasons which follow, we disagree.

Standard of Review- Crim.R. 29 motions

{¶43} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." *See also State v. Cheatham*, 2025-Ohio-2584, at ¶ 11 (4th Dist.). An appellate court

reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the evidence claim. *State v. Gonz*, 2024-Ohio-5885, ¶ 9 (4th Dist.); *State v. Webb*, 2023-Ohio-4050, ¶ 42 (4th Dist.); *State v. Tenace,* 2006-Ohio-2417, ¶ 37. Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *See Gonz*, at ¶ 10; *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Webb*, *supra*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, (superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307 (1979)).

{¶44} As will be discussed fully below, we find appellant's convictions are supported by sufficient evidence. Therefore, in our view, had trial counsel made a Crim.R. 29 motion, it would not have been successful. We are again mindful that defense counsel is not required to perform a futile act. Based on the foregoing, we do not find appellant's trial counsel performed deficiently on this particular basis. Accordingly, appellant's argument hereunder is also without merit.

Issue Four - Cross-examination and Closing Argument

{¶45} At trial, defense counsel did not cross-examine Trooper Day or Brianna Ray, the OSHP's forensic analyst. Herein, appellant suggests that Trooper Day could have been questioned as to his own forensic testing or why the troopers apparently did not attempt to speak to appellant's brother who had allegedly had the rental car the day before. Appellant urges that questioning of Trooper Day could have emphasized the lack of appellant's actual possession of the contraband and the fact that appellant did not attempt to hide or tamper with the contraband and substances found during the search appellant also argues that his counsel should have explored Ray's testing procedures on the various illicit substances. For the reasons which follow, we disagree that counsel performed deficiently on these bases.

{¶46} "Generally, '[t]he extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel.' " *State v. Guysinger*, 2017-Ohio-1167, ¶ 27, quoting *State v. Leonard,* 2004–Ohio–6235, ¶ 146. Moreover, " [a]n appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination. "

(Internal citations omitted.).  *See State v. Allah*, 2015–Ohio–5060, ¶ 23 (4th Dist.).

{¶47} Based on our review, we conclude that trial counsel made strategic choices.  Appellant's claim that cross-examination on the above topics would have aided his case is mere speculation.  *See State v. Russell*, 2009-Ohio-5145, at ¶ 27 (4th Dist.).  His trial counsel may have concluded that cross-examination on the above topics would have only reinforced the amounts of the substances, emphasized appellant's lack of surprise when the contraband was discovered, and further damage appellant's credibility.

{¶48} Appellant also claims his trial attorney's closing argument was ineffective.  First, he points out the defense closing argument was less than two pages.  Appellant next suggests that his attorney should have discussed reasonable doubt more fully.  Finally, appellant argues that his counsel should have discussed the lack of physical evidence against him.  Again, for the reasons which follow, we disagree.

{¶49} "[C]ounsel are afforded wide latitude during closing arguments. The length of a closing argument ordinarily involves questions of discretion and strategy."  *State v. Billiter*, at ¶ 67 (4th Dist.), quoting *State v. Grate*, 2020-Ohio-5584, ¶ 163; *accord State v. White*, 2024-Ohio-549, ¶ 65 (4th Dist.), quoting *Guysinger*, at ¶ 34 (4th Dist.) ("Generally, '[c]ounsel's

decision on whether to give an opening statement or closing argument and how to formulate and deliver them are tactical decisions.' ").  The length of a closing argument thus is a debatable trial tactic that generally does " 'not constitute a deprivation of effective counsel.' " *Grate* at ¶ 163, quoting *State v. Lang*, 2011-Ohio-4215, ¶ 192.  Likewise, " '[t]he substance of closing argument falls within the realm of trial strategy.' "  *State v. White*, 2024-Ohio-549, ¶ 65 (4th Dist.), quoting *State v. Cameron,* 2009-Ohio-6479, ¶ 31 (10th Dist.); *accord State v. Sharpless*, 1998 WL 1759070, *9  ("[t]he substance of closing argument is a trial strategy that may not be second-guessed with hindsight").

{¶50} In *Billiter,* appellant argued similarly that trial counsel failed to provide the effective assistance of counsel during closing argument as follows:

> [C]ounsel's closing argument "was not effective and likely had little impact on the jury…" [T]rial counsel's closing argument spans "less than three pages of the transcript." [S]he did not "discuss reasonable doubt, the importance of it, or how high of a burden it is for the State to overcome."

{¶51} In *Billiter*, we concluded that "appellant could overcome the presumption that the length and substance of trial counsel's closing argument was a matter of reasonable trial strategy, especially considering the strength of the State's evidence." *Id*. at ¶ 68.  The same is true herein.  The State of

Ohio's circumstantial evidence of drug possession and trafficking was substantial. In closing, defense counsel discussed reasonable doubt. Defense counsel emphasized the fact that it was a rental vehicle appellant traveled in and noted that appellant consistently denied possession of the drugs and firearm. Counsel emphasized the rental agent's testimony that sometimes, after cars are dropped off, Enterprise employees find drugs in them. Counsel reminded the jurors that they must find all elements of the offenses beyond a reasonable doubt. As in *Billiter,* we view appellant's brief argument as a matter of reasonable trial strategy. Thus, this argument is also without merit.

Issue Five - Preparation for Trial

{¶52} Appellant contends that his trial counsel was not prepared for his trial and failed to meet with him in the days leading up to trial. Appellant cites to a discussion the first morning of trial. Defense counsel made a motion to continue the trial indicating that appellant had new counsel he wished to represent him. Appellant indicated that he thought the trial was being continued due to a scheduling conflict. He then stated: "I've been told one thing and it's been another here in court." Appellant indicated he thought he would be having a suppression hearing, not at trial. He found out

the trial date was not continued.  He also stated:  "I don't even know what my defense is."

{¶53}  In response, defense counsel explained the details of the scheduling conflict and its resolution.  The assistant prosecutor also advised the court that appellant would have known about the trial date at his final pretrial hearing.  Appellant reiterated his displeasure and view of the situation.  Appellant also referenced plea negotiations as follows:  "[Y]es, I was told when they pulled the deal off the table, I- - I hadn't even heard of that deal before ten minutes before I came into court that day."  The trial court then looked at his notes and advised appellant that the offer was originally made at the end of November 2022.  Appellant maintained that he had not been informed.

{¶54}  "Absent any indication in the record * * * that counsel failed to properly investigate the case and adequately prepare for trial and given the presumption of competent representation, we cannot conclude that counsel's performance fell below an objective standard of reasonableness."  *State v. Laws,* 2021-Ohio-166, at ¶ 47 (3d Dist.); *State v. Griffin*, 3d Dist. Allen No. 1-03-31, 2004-Ohio-287, ¶ 17.  "[A]claim of ineffective assistance of counsel on direct appeal cannot be premised on decisions of trial counsel that are not reflected in the record of proceedings[,] * * * [or] [s]peculation

regarding the prejudicial effects of counsel's performance * * *." *State v. Fridley*, 2019-Ohio-3412, at ¶ 32 (9th Dist.). *State v. Leyland,* 2008-Ohio-777, ¶ 7 (9th Dist.). Upon review of the record herein, we simply do not have anything except appellant's unsubstantiated assertions that his trial counsel failed to properly prepare his case for trial.[2] Accordingly, this argument is also without merit.

{¶55} Based on the foregoing, appellant's first assignment of error, in its entirety, is hereby overruled.

### Assignment of Error Two - Trial in Absentia

### Standard of Review

{¶56} Under the second assignment of error, appellant contends that the trial court erred when it proceeded with the jury trial despite his absence. This argument implicates appellant's federal and state due process rights. To find that a defendant's right to confrontation was violated, we must find that the trial court abused its discretion in removing the defendant. *See State v. Dumas*, 2015-Ohio-2683, at ¶ 19 (7th Dist.), citing *Illinois v. Allen*, 397 U.S. 337 at 343 (date).

### Legal Analysis

---

[2] " ' "We may not consider matters outside the record on a direct appeal. Instead, an appellant may raise matters outside the record by filing a postconviction relief petition in the trial court." ' " *Cheatham, supra*, at ¶ 89, quoting *State v. Spires,* 2011-Ohio-3661, ¶ 30 (4th Dist.), in turn quoting *State v. Hoke*, 2011-Ohio-1221 at ¶ 10 (4th Dist.).

{¶57} Article I, Section 10 of the Ohio Constitution states, " '[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel.' " *State v. Blanton*, 2018-Ohio-1278, at ¶ 100 (4th Dist.), quoting *State v. Lawwill,* 2007-Ohio-2627, at ¶ 60 (8th Dist.). *See State v. Smith,* 2021-Ohio- 2866, at ¶ 39 (4th Dist.). " 'A criminal defendant has a federal and state fundamental due process right to be present at all critical stages of his trial, absent a waiver of rights or other extraordinary circumstances.' " *Blanton, supra*, quoting *State v. Drummond,* 2006-Ohio-7078, at ¶ 93 (7th Dist.)(Internal citations omitted.). *See also* Crim.R. 43(A). " 'Crim.R. 43 provides a criminal defendant the right to be present at every stage of the criminal proceedings and any modification of a sentence.' " *State v. Smith,* 2015-Ohio-841, ¶ 12 (4th Dist.), quoting *State v. Patrick,* 2013-Ohio-3821, ¶ 10 (4th Dist.); citing Crim.R. 43(A)(1); compare *State v. Glasser,* 2012-Ohio-3265, ¶ 49 (4th Dist.), citing *State v. Davis*, 2008-Ohio-2, at ¶ 90.

{¶58} However, a defendant's right to be present at trial is not absolute. *State v. White,* 82 Ohio St.3d 16, 26 (1998). Crim.R. 43(A) also provides that if a trial is commenced in the presence of the defendant, who thereafter voluntarily absents himself, the trial may continue in defendant's absence. *See State v. Dennis*, 2005-Ohio-1530, (10th Dist.); *State v.*

*Harrison,* 88 Ohio App.3d 287, 290 (1st Dist.1993).  Therefore, the right to

be present at trial may be waived by the defendant's own acts.  *State v.*

*Meade,* 80 Ohio St.3d 419, 421 (1997).  A defendant's presence is required

at trial unless he waives his right or extraordinary circumstances exist

requiring exclusion, such as his misconduct.  *See State v. Smith*, 2021-Ohio-

2866, at ¶ 40 (4th Dist.);  *Dumas, supra*; *State v. Brown*, 2004-Ohio-3368

(5th Dist.), citing *State v. Williams,* 6 Ohio St.3d 281, 286 (1983).[3]

The exclusion of a defendant should be considered in light of the whole

record.  *United States v. Gagnon,* 470 U.S. 522, 526 (1985).

{¶59 } Appellant failed to attend the second day of his trial.  In *Taylor*

*v. United States,* 414 U.S. 17 (1973), the United States Supreme Court

discussed Fed. Rule Crim. Proc. 43 with respect to the consequences of the

defendant's voluntary absence from trial, as follows:

> [FRCP 43] reflects the long-standing rule
> recognized by this Court in *Diaz v. United States,* 223 U.S.
> 442, 455 (1912):

> '(W)here the offense is not capital and the accused
> is not in custody, the prevailing rule has been, that if, after
> the trial has begun in his presence, he voluntarily absents
> himself, this does not nullify what has been done or
> prevent the completion of the trial, but, on the contrary,
> operates as a waiver of his right to be present and leaves

---

[3] For example, "Where a defendant's conduct in the courtroom is so disruptive that the hearing or trial cannot reasonably be conducted with the defendant's continued physical presence, the hearing or trial may proceed in the defendant's absence or by remote contemporaneous video." Crim.R. 43(B); *Smith, supra,* at ¶ 40.

the court free to proceed with the trial in like manner and with like effect as if he were present.' (Citations omitted.)

{¶60} Ohio case law also provides that after a trial has commenced in the defendant's presence, a trial court may proceed without the defendant if the absence is voluntary. *State v. Murray*, 2004-Ohio-654, at ¶ 12 (1st Dist.); *State v. Liston,* 1999 WL, 778377, * 3 (11th Dist.). Whether or not a defendant's absence is voluntary is an issue of fact. *Id*., quoting *In re Ruth* , 1998 WL 552997, at *3 (11th Dist.); *State v. Chancey,* 2000 WL 193235, at *4 (8th Dist.) This court is bound to accept a trial court's findings of fact if they are supported by competent, credible evidence. *State v. Dalton,* 2003-Ohio-3813, at ¶ 20. Unrebutted evidence that the defendant was aware of his obligation to attend the court proceeding and did not appear is sufficient to support a finding that the absence is voluntary. *See Chancey*, at *4.

{¶61} When appellant failed to attend, the parties discussed the matter out of the presence of the jury as follows:

> Mr. Stratton: Yes, Your Honor. Mr. Jackson contacted me about 7:00 a.m. this morning, indicating that he has car trouble. I informed the Court shortly after that, along with the Prosecutor, that my client was having a problem with - - car trouble. He indicated he is still in Michigan. The last communication I had with him was at 8:15. I have sent him four additional text messages after that trying to get his location, and then asking him additional questions. I also tried to call him twice. I've left two voice messages, and I can attempt to call him to - - again on the record, if you so, please.

The Court: …We were here til a little bit after 5:00 last night…. A little surprising he would decide to drive back to Michigan last night considering I - - I'd informed him that we needed to talk this morning and go over jury instructions at 8:30. I'm thinking it's about a five-hour drive, maybe longer, depending on which side of Michigan he lives in…. Any reason why he decided to go back to Michigan? To be honest, Mr. Stratton, it looks like he wasn't planning on coming back.

Mr. Stratton: Your Honor, he said he would be back. I specifically asked him that yesterday. I said, "make sure you come back tomorrow." He said, "I'll be back. I'll be here." And his…reason for not being here earlier is because of car trouble. That's why he's saying - - he gave some indication of that.

The Court: Well, I know I'd asked you to find out where he is at having car trouble so we could send local law enforcement by to check on his wellbeing, see if they could get the car started, and getting him headed this direction. If you have been able to find out from him exactly where he's at?

Mr. Stratton: Your Honor, I asked him "what is the address you're at.?" I've asked him that twice. I've also asked - - left voice messages for that, asking him where he's at, that "the Court needs to know." Your Honor, my text messages have read receipts on them, and the last four messages, he has read, but has not responded.

The Court: … So, anything else you'd like to say for the record, Mr. Stratton?

Mr. Stratton: Your Honor, he could be out, you know, trying to get his car fixed. He was here all day yesterday. I have no other - - nothing else to say on it.

{¶62} At this point, the prosecutor suggested that a jury instruction to be given to the jury in defendant's absence, indicating that the jury was not to speculate on that in any way. The prosecutor also indicated that he had done a Google map search and appellant's home address in Westland, Michigan appeared to nearly a five-hour drive. The trial court noted the time was 9:40 a.m. and that he would give defense counsel a little more time to attempt contact with appellant. The court noted if he could confirm the excuse of car trouble, he would tell the jury to come back at 1:00 p.m. The court took a short recess and returned at 10:00 a.m. The court inquired as to whether defense counsel had heard from appellant. Defense counsel indicated he had left four voice messages and was receiving no response to a text message, although it indicated it was read. Defense counsel also advised that he had called from the court's number, his own, and an unavailable number. The State requested to proceed in appellant's absence.

{¶63} At this point, the trial court noted that it was near the end of trial and that the jury had been sworn and as such, the court would proceed with trial in appellant's absence. The court issued a warrant for appellant's arrest. Defense counsel moved for a mistrial, noting that appellant had given a reason for his absence. The trial court denied the motion.

{¶64} When the jury returned to the courtroom, the trial court gave

the following instruction:

> All right. Well, you've probably noticed that the Defendant is not present. As jurors, you must not speculate on why the Defendant is not present. This trial will continue without him being present. You must…also not consider the fact he is not present for any purpose. Your duties as jurors is constrained to determining the issues as raised in the indictment, and you may not consider the Defendant's absence for any purpose. My question to the jurors and the alternative juror is can you follow this instruction? If so, I need you to nod your heads, yes. Okay. Anyone that feels they cannot follow my instruction? No one's raised their hand. All right. The trial will continue with the defendant's absence.

{¶65} Based on our review, it appears that appellant's absence was

completely voluntary.[4] In this case, it also appears that the trial court gave

appellant every benefit of the doubt, giving defense counsel additional time

to try to secure appellant's presence, offering to delay the start of trial if

appellant confirmed the reason for his absence, and crafting the special jury

instruction. We also find no reason to conclude that the jurors did not follow

the instruction.

{¶66} Based on the foregoing, appellant's second assignment of error

is also without merit and is hereby overruled.

---

[4] We also observe that at sentencing, appellant apologized to the court for his behavior in failing to attend on the second day but made no effort to explain or verify the previously given reason of car trouble.

Assignment of Error Three - Allied Offenses

{¶67} At sentencing, the trial court merged Counts One, R.C. 2925.03(A)(2), trafficking in a fentanyl-related compound, and Two, R.C. 2925.11(A), possession of a fentanyl-related compound.  The court also merged Counts Three, R.C., trafficking in a fentanyl-related compound, and Four, R.C. 2925.11(A), possession of a fentanyl-related compound.  The counts each contained a firearm specification.  Appellant argues that the trial court erred by not also merging the trafficking Counts One and Three.

Standard of Review

{¶68} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." *See State v. Hughes,* 2021-Ohio-3127, at ¶ 17 (4th Dist.).  This protection applies to Ohio citizens through the Fourteenth Amendment and is additionally guaranteed by Article I, Section 10 of the Ohio Constitution.  This constitutional protection prohibits multiple punishments in a single trial for the same conduct in the absence of a clear indication of contrary legislative intent.  *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *State v. Fannon,* 2018-Ohio-5242, ¶ 129 (4th Dist.).

{¶69} The General Assembly enacted R.C. 2941.25 to identify when a

court may impose multiple punishments:

> (A)Where the same conduct by defendant can be
> construed to constitute two or more allied offenses of
> similar import, the indictment or information may contain
> counts for all such offenses, but the defendant may be
> convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more
> offenses of dissimilar import, or where his conduct results
> in two or more offenses of the same or similar kind
> committed separately or with a separate animus as to each,
> the indictment or information may contain counts for all
> such offenses, and the defendant may be convicted of all
> of them.

{¶70} Although the trial court's duty to merge allied counts at

sentencing is mandatory, *State v. Underwood*, 2010-Ohio-1, ¶ 26, a

defendant bears the burden to establish that he is entitled to the R.C. 2941.25

protection. *State v. Washington*, 2013-Ohio-4982, ¶ 18. An appellate court

reviews a trial court's determination de novo as to whether offenses

constitute allied offenses of similar import that require R.C. 2941.25 merger.

*State v. Williams*, 2012-Ohio-5699, ¶ 28; *State v. Cole*, 2014-Ohio-2967, ¶ 7

(4th Dist.).

Legal Analysis

{¶71} In *State v. Ruff,* 2015-Ohio-995, the Supreme Court of Ohio

discussed the proper analysis to determine whether two offenses merge

under R.C. 2941.25. "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors - the conduct, the animus, and the import." *Id.* at paragraph one of the syllabus. "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate or identifiable." *Id.* at paragraph two of the syllabus.

{¶72} Appellant argues that the fentanyl found in Count One was located in an energy drink can and the fentanyl found in Count Three was located in a backpack. Appellant submits that these are offenses of similar import because the substances were located at the same time and place. Appellant argues that Ohio's drugs trafficking and possession laws are aimed at preventing harm to single victim - society in general. *See generally*

*State v. Bontrager*, 2022-Ohio-1367, ¶ 16 (4th Dist.).  Therefore, any harm is not separate and identifiable.

{¶73} In response to appellant's arguments, the State asserts that the fentanyl relating to Counts One and Three constituted offenses with separate animus and are offenses of dissimilar import.  At sentencing, the prosecutor argued that the fentanyl relating to Count One was discovered in a Venom energy drink can that was concealed in a false compartment.  The fentanyl in Count One was part of a 72.3-gram mixture of fentanyl, tramadol, and cocaine.  By contrast, the fentanyl relating to Count Three was found in a storage compartment behind the driver's seat.  This fentanyl was in an amount of 10.13 grams and was solely fentanyl.

{¶74} On appeal, the State also points to the digital scales, sandwich baggies, and loaded firearm also located in the vehicle.  The State contends that these items, along with the drugs  of different weights and found in separate compartments, all reflect indicia of trafficking and intent to sell these items separately.  The State urges us to conclude that Counts One and Three resulted in separate animus and are offenses of similar disport.

{¶75} We note that at sentencing, appellant had a new attorney, who raised the issue of merger but did not formally object when the trial court declined to merge Counts One and Three.  Therefore, the argument is

waived except for plain error.  *See State v. Hughes*, 2025-Ohio-894, at ¶ 21

(4th Dist.), citing *State v. Rogers*, 2015-Ohio-2459,  ¶ 28 ("the failure to

raise the allied offense issue at the time of sentencing forfeits all but plain

error").  Under the plain-error doctrine, intervention by a reviewing court is

warranted only under exceptional circumstances to prevent injustice.  *See*

*Hughes*, at ¶ 22.[5]

{¶76} Appellant's argument is similar to an argument posited in *State*

*v. Jones,* 2024-Ohio-2959 (3d Dist.).  On appeal, Jones argued that the trial

court erred by failing to merge his aggravated-possession-of-drugs

convictions under Counts Three and Four in his case because "[t]he relevant

drug-related statutes do not clearly indicate that the General Assembly

intended to punish crystal-form and pill-form methamphetamine doubly."

*Id*. at ¶ 50.

{¶77} The *Jones* court began by observing that "[t]he term 'animus'

means " 'purpose or, more properly, immediate motive." ' "  *Id*., at ¶ 49

(citations omitted), quoting *State v. Logan,* 60 Ohio St.2d 126, 131 (1979).

---

[5] *See also State v. Long*, 53 Ohio St.2d 91(1978), paragraph three of the syllabus ("Notice of plain error ... is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice").  Thus, to prevail under the plain-error doctrine, appellant must establish that "an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial."  (Emphasis added in *Rogers*.)  *State v. McAlpin,* 2022-Ohio-1567, ¶ 66, quoting *Rogers* at ¶ 22; *see also State v. Wilks*, 2018-Ohio-1562, ¶ 52, *State v. Bailey*, 2022-Ohio-4407, ¶ 8.

" 'Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances.' " *State v. Ramey,* 2015-Ohio-5389, at ¶ 71 (2d Dist.), quoting *Logan* at 131.  " 'Thus, the manner in which a defendant engages in a course of conduct may indicate distinct purposes.' "  *Ramey, supra* quoting *State v. Whipple*, 2012-Ohio-2938, ¶ 38 (1st Dist.).  " 'Courts should consider what facts appear in the record that "distinguish the circumstances or draw a line of distinction that enables a trier of fact to reasonably conclude separate and distinct crimes were committed." ' "  *Ramey* quoting *Whipple* at ¶ 38, in turn quoting *State v. Glenn*,  2012-Ohio-1530, ¶ 9 (8th Dist.).

{¶78} The *Jones* court also observed at ¶ 55 that it is well established that " 'the legislature intended the possession of the different drug groups to constitute different offenses.' "  *State v. Polachek*, 2010-Ohio-5421, ¶ 27, quoting *State v. Delfino*, 22 Ohio St.3d 270, 273 (1986).  However, Jones was found guilty of committing two separate counts of possessing the same substance in different forms.  In support of his argument that his convictions were allied offenses of similar import under R.C. 2941.25, Jones contended that the "record contain[ed] no evidence that Mr. Jones possessed crystal-form methamphetamine for some purpose distinct from his possession of pill-form methamphetamine." *Id.* at ¶ 56.  The State disputed Jones's

argument, noting that "[t]he drugs were in different forms, in different locations, and one was found in a backpack which would indicate portability" for purposes of sale. *Id*.

{¶79} The *Jones* court agreed with the State, finding that based on the specific facts and circumstances of the case, the trial court did not err by failing to merge Jones's aggravated-possession-of-drugs convictions. "[E]ven though the methamphetamine was discovered on the same day in Jones's residence (albeit in different forms), we conclude that Jones committed the offenses separately and with a separate animus or motivation." *Id.* at ¶ 58. The *Jones* court pointed to its own prior decision that the simultaneous possession of a single drug in different forms is not dispositive of an allied-offense analysis. *See State v. Kamara*, 2019-Ohio-5385, ¶ 47 (3d Dist.), (concluding that "although powder cocaine and crack cocaine are two different forms of cocaine, that fact is not dispositive"). *Jones* also noted that "[u]nder Ohio law, the fact that drugs may have been recovered on the same date is not dispositive of the allied offense issue." *Id.* at ¶ 60; *Gomez* at ¶ 24.

{¶80} The *Jones* court held:

> In this case, the record reveals that law enforcement recovered differing quantities of the pill-form methamphetamine and crystal-form methamphetamine in different locations of Jones's residence….Specifically,

after searching Jones' residence… law enforcement recovered 5.11 grams of methamphetamine in crystal form and 12.8 grams of methamphetamine in pill form….The crystal-form methamphetamine was discovered in close proximity to digital scales with white residue along with creatine powder, which is "used to * * * cut drugs for sale…" Separately, law enforcement recovered the pill-form methamphetamine from a backpack that also contained a large amount marijuana. The backpack containing the drugs was found hidden in a pile of clothing, which was situated next to the door of Jones's residence. Also hidden in the pile of clothing was a firearm.

Based on these facts, we conclude that Jones possessed the pill-form methamphetamine and crystal-form methamphetamine separately and with a separate animus or motivation. *See State v. Delgadillo-Banuelos*, 2019-Ohio-4174, ¶ 20 (10th Dist.), (concluding that "where the facts presented indicate law enforcement's recovery on the same date of differing quantities of the same type of illicit substance at different locations, R.C. 2941.25 permits a conviction and sentence for each of the offenses"). Critically, the record reveals that law enforcement discovered two distinctly different stashes of methamphetamine in this case. *See id.* at ¶ 18, quoting *Gomez* at ¶ 20, fn. 1 (identifying "federal courts [that] 'have held that convictions for multiple counts of possession on the same date involving distinct stashes of drugs do not raise multiplicity or double jeopardy issues' "). Moreover, the record reveals that pill-form methamphetamine and crystal-form methamphetamine were not only in different forms but they were also packaged separately…. Consequently, we conclude that Jones "possessed the drugs separately, and with a separate animus or motivation." *State v. Wolfe,* 2022-Ohio-117, ¶ 36 (5th Dist.). (Citation omitted.) Thus, the trial court did not err by failing to merge Jones's aggravated-possession-of-drugs convictions.

*Jones,* at ¶ ¶ 62-63.

{¶81} At appellant's sentencing, the trial court concluded that under the specific facts of the case - "the packaging of those items, the location in different locations of the vehicle and…the contraband found in the vicinity, in particular a hidden compartment suggests that these offenses were committed with a separate animus."  Based on the case law as discussed above, we agree with the trial court's determination.  Thus, we do not find that the trial court committed plain error by failing to merge Counts One and Three.  Accordingly, the third assignment of error is without merit and is hereby overruled.

Assignment of Error Four - Consecutive Sentence

{¶82} Due to the consecutive nature of the sentences, the court imposed a minimum prison term of 25 years and six months, with 18 years being mandatory, to an indefinite maximum prison term of up to 31 years. Appellant concedes that the trial court made the appropriate findings on the record.  However, Appellant argues that consecutive sentences  are not supported by the record.  Specifically, appellant contends that the sentences were not necessary to protect the public from future crime; not necessary to punish him; were disproportionate; and were not based upon a history of criminal conduct.

Standard of Review - Felony Sentencing

{¶83} When reviewing felony sentences, appellate courts apply the standard set forth in R.C. 2953.08(G)(2). *State v. Hill,* 2025-Ohio-798, ¶ 30 (4th Dist.); *State v. Spencer,* 2024 Ohio-59, ¶ 13 (4th Dist.). R.C. 2953.08(G)(2)(a) provides that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, the statute authorizes appellate courts to "increase, reduce, or otherwise modify a sentence" "if it clearly and convincingly finds either of the following":

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

Legal Analysis

{¶84} The Supreme Court of Ohio has recognized that R.C. 2953.08(G)(2) means that appellate courts ordinarily, " 'defer to trial courts' broad discretion in making sentencing decisions.' " *State v. Collins*, 2024-Ohio-2891, ¶ 22 (4th Dist.), quoting *State v. Gwynne*, 2023-Ohio-3851, ¶ 11. (Citations omitted.) As recently stated by the Supreme Court of Ohio in *State v. Glover*, 2024-Ohio-5195, ¶ 39:

> That makes sense: the trial judge presided over the trial and heard the witnesses testify, the defendant made his allocution to the sentencing judge directly, and the trial judge will often have heard directly from the victims at sentencing. Thus, an appellate court's role is not to be a "second-tier sentencing court."

*Hill, supra*, at ¶ 31; *State v. Jones*, 2020-Ohio-6729, ¶ 41-42.

{¶85} In *State v. Hammons,* 2024-Ohio-6128, the Sixth District court provided a thorough discussion of the Supreme Court's decision in *Glover, supra*. "The Ohio Supreme Court has made it clear that 'an appellate court may not reverse or modify a trial court's sentence based on its subjective disagreement with the trial court.' " *Hammons, supra,* at ¶ 22, quoting *Glover,* 2024-Ohio-5195, ¶ 45. The *Glover* court noted that "[t]he court of appeals may have disagreed with the trial court's assessment [of the magnitude of the harm inflicted by Glover] but this disagreement with the trial court's assessment is far different from concluding that the record clearly and convincingly does not support the trial court's consecutive-sentence findings." *Id.* at ¶ 55.

{¶86} Thus, R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify consecutive sentences only if the record does not "clearly and convincingly" support the trial court's R.C. 2929.14(C)(4) consecutive-sentence findings. The clear-and-convincing standard for appellate review in R.C. 2953.08(G)(2) is written in the

negative.  *Collins,* ¶ 22; *Gwynne,* 2023-Ohio-3851, at ¶ 13.  Moreover,

"clear and convincing evidence" is "that measure or degree of proof which is

more than a mere 'preponderance of the evidence,' but not to the extent of

such certainty as is required 'beyond a reasonable doubt' in criminal cases,

and which will produce in the mind of the trier of facts a firm belief or

conviction as to the facts sought to be established."  *Cross v. Ledford,* 161

Ohio St. 469 (1954), paragraph three of the syllabus.

{¶87} In general, a statutory presumption exists in favor of concurrent

sentences pursuant to R.C. 2929.41(A) and R.C. 2929.14(C)(4) governs the

imposition of consecutive terms of imprisonment.  *Collins,* ¶ 23; *Glover,*

*supra,* at ¶ 38.  To justify the imposition of consecutive terms of

imprisonment, "a trial court must make the findings mandated by R.C.

2929.14(C)(4) at the sentencing hearing and incorporate its findings into its

sentencing entry, but the court has no obligation to state reasons to support

its findings."  *State v. Blair,* 2019-Ohio-2768 ¶ 52 (4th Dist.), citing *State v.*

*Bonnell,* 2014-Ohio-3177, syllabus.  This Court explained the findings

required to support the imposition of consecutive sentences:

> "Under the tripartite procedure set forth in R.C.
> 2929.14(C)(4), prior to imposing consecutive sentences a
> trial court must find that: (1) consecutive sentences are
> necessary to protect the public from future crime or to
> punish the offender; (2) consecutive sentences are not
> disproportionate to the seriousness of the offender's

conduct and to the danger the offender poses to the public; and (3) that one of three circumstances specified in the statute applies."

*Hill, supra,* ¶ 36, quoting *State v. Cottrill,* 2020-Ohio-7033, ¶ 14 (4th Dist.).

{¶88} Further, as we outlined in *Cottrill*, and more recently in *Collins*, the three circumstances are:

"(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

*Cottrill* at ¶ 14, and *Collins*, ¶ 24, quoting R.C. 2929.14(C)(4)(a)-(c).

{¶89} The record must support any findings that the applicable statutory sentencing provisions require and made by the sentencing court, such as those contained in R.C. 2929.14(C)(4)(c). *Collins*, ¶ 25; *State v. Drummond,* 2024-Ohio-81, ¶ 11 (4th Dist.). Further, in *Drummond* we observed that the plain language of R.C. 2953.08(G)(2) requires an appellate

court to defer to a trial court's consecutive-sentence findings, and to uphold the trial court's findings unless those findings are clearly and convincingly not supported by the record. *Drummond* at ¶ 12. In *State v. Bonnell,* 2014-Ohio-3177, the Supreme Court of Ohio held, "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]" *Id.* at ¶ 37.

{¶90} As is well-established, the trial court is not required to use "talismanic words," but it must be clear from the record that it actually made the findings required by statute. *State v. Bonnell*, 2014-Ohio-3177, syllabus, at ¶ 37; *State v. Venes* at ¶ 14. The Supreme Court of Ohio further explained that the word "finding" in this context means that the trial court "must note that it engaged in the analysis" and that it "considered the statutory criteria and specifie[d] which of the given bases warrants its decision." *Bonnell* at ¶ 26. As long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld. *Id.* at ¶ 29.

{¶91} In this case, the sentencing transcript and entry reflect that the trial court engaged in the correct analysis. The record contains evidence to support the findings that appellant's consecutive sentences are necessary to

protect the public from future crime, necessary to punish him, were proportionate, and were based on his history of criminal conduct.

{¶92} At sentencing, appellant's counsel pointed out that appellant, a Michigan resident, was 34-years old with six children. While he had two prior felonies, counsel indicated appellant had never actually served a prison term. Counsel also informed that appellant's mother died in 2022 and consequently he became involved with drugs.

{¶93} Appellant argues herein that consecutive sentences were not necessary to protect the public from future crime. Appellant points out that if the sentences were ordered to be served concurrently, he would still have a mandatory prison sentence of 11-16 ½ years, keeping him incarcerated until his 40's. Appellant also argues the mandatory sentence of 11-16 ½ years is sufficient punishment for his conduct. Appellant also argues that his criminal history does not warrant consecutive sentences to protect the public from future crime.

{¶94} The prosecutor pointed out and the record reflects that appellant had two prior felony convictions, one for drugs and one for robbery. The prosecutor also pointed out that appellant had various bond violations throughout the pretrial proceedings and failed to attend the second day of trial. A firearm was confiscated from the vehicle appellant drove,

along with the illegal substances.  This court has previously observed that

" 'the possession, use, and distribution of illegal drugs "represent one of the

greatest problems affecting the health and welfare of our population." ' "

*State v. Wyke*, 2025-Ohio-4990, at ¶ 51 (4th Dist.), quoting *State v. Gipson*,

2022-Ohio-2069, at ¶ 53, (6th Dist.), quoting *Treasury Emps. v. Von Raab*,

489 U.S. 656, 668 (1989).  In *Wyke*, we also observed "Alcohol, drugs and

guns are a deadly combination. * * * A staggering percentage of the

shooting accidents that occur every year involve alcohol or drugs."

Remington Arms Company, Ten Commandments of Firearm Safety,

available at https://www.remington.com/support/safety-center/ten-

commandments-firearm-safety (accessed Sept. 25, 2020)

[https://perma.cc/NCD7-TDWB].  *See Wyke, supra.*

{¶95} Appellant also argues that his sentence is disproportionate to

the seriousness of his conduct and the danger he poses to the public and is

actually harsher than a prison sentence one would serve for committing a

homicide.  In *State v. Alexander,* 2024-Ohio-2565, ¶ 112 (7th Dist.), the

court held that "[a] defendant alleging disproportionality in felony

sentencing has the burden of producing evidence to 'indicate that his

sentence is directly disproportionate to sentence given to other offenders

with similar records who have committed these offenses.' "  *State v.*

*Williams,* 2015-Ohio-4100, ¶ 52 (7th Dist.), citing *State v. Wilson,* 2013-Ohio-3915, ¶ 16 (8th Dist.). *See also State v. Hill,* 2025-Ohio-798, at ¶ 44 (4th Dist.).  Thus, not only must a defendant demonstrate a disproportionate sentence, but he must also provide evidence of a similarly situated defendant, including consideration of all prior criminal records.

{¶96} Furthermore, proportionality review should focus on individual sentences, rather than on the cumulative impact of multiple sentences imposed consecutively.  *See Hill, supra,* at 45, citing *State v. Taylor*, 2024-Ohio-238 (5th Dist.) (citations omitted), at ¶ 20.  "Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment."  *Id*.  As a general rule, a sentence falling within the terms of a valid statute cannot amount to a cruel and unusual punishment.  *Id*. at ¶ 21.  Moreover, the *Glover* court also noted that, "[n]owhere does the appellate-review statute direct an appellate court to consider the defendant's aggregate sentence."  *Id*. at ¶ 43; *See also, State v. Scott*, 2024-Ohio-5849, ¶ 108 (6th Dist.)

{¶97} Herein, appellant has not argued the disproportionality of his individual sentences.  Each of the individual sentences was within the

statutory range.  To support a proportionality argument, appellant should have presented evidence to indicate that his sentence is "directly disproportionate to sentences given other offenders with similar records" who have committed the same offenses.  As appellant did not, he has failed to present the type of evidence, in support of his proportionality argument, as required by Ohio law.

{¶98} Based on the foregoing, appellant's consecutive sentence is clearly and convincingly supported by the record and is not otherwise contrary to law.  Accordingly, appellant's fourth assignment of error is without merit and is hereby overruled.

### Assignment of Error Five - Sufficiency/Manifest Weight

### Standard of Review

{¶99} When reviewing whether the evidence is sufficient to sustain a conviction, the focus is on the adequacy of the evidence.  *See State v. Maynard*, 2025-Ohio-4943, at ¶ 43 (4th Dist.); *State v. Sims*, 2023-Ohio-1179, ¶ 115 (4th Dist.).  Thus, "[t]he standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.*

{¶100} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *See Maynard*, at ¶ 24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Const. Co*., 54 Ohio St.2d 279 (1978), syllabus.

{¶101} The weight and credibility of evidence are to be determined by the trier of fact. *See Maynard*, at ¶ 25, citing *State v. Kirkland,* 2014-Ohio-1966, ¶ 132. The trier of fact "is free to believe all, part or none of the testimony of any witness," and we "defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Dillard*, 2014-Ohio-4974, ¶ 28 (4th Dist.), citing *State v. West,* 2014-Ohio-1941, ¶ 23 (4th Dist.).

{¶102} "In addition, '[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses.' " *Maynard, supra*, at ¶ 26, quoting *State v. Chancey*, 2015-Ohio-5585, ¶ 36 (4th Dist.) (Citations omitted.).  Moreover, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences [sic] do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Corson*, 2015-Ohio-5332, ¶ 31 (4th Dist.), quoting *State v. Proby*, 2015-Ohio-3364, ¶ 42 (10th Dist.), citing *State v. Gullick,* 2014-Ohio-1642, ¶ 10 (10th Dist.).

{¶103} A finding that a conviction is supported by the manifest weight of the evidence is "also dispositive of the issue of sufficiency."  *Sims*, 2023-Ohio-1179, ¶ 120 (4th Dist.), citing *State v. Waller,* 2018-Ohio-2014, ¶ 30 (4th Dist.).  *See Maynard,* at ¶ 27.

Legal Analysis

{¶104} The trial court merged appellant's possession convictions with the trafficking convictions, and the State elected that appellant be sentenced on the trafficking counts.  So, here we are concerned with the trafficking convictions.  Even so, a trafficking conviction must consider the offender's possession of the drugs "because to sustain an R.C. 2925.03(A)(2)

trafficking conviction as principal offender, the state must also prove that the defendant had control over, i.e., possessed, the illegal substance." *Maynard, supra*, at ¶ 28, quoting *State v. Foster*, 2023-Ohio-746, at ¶ 22 (4th Dist.), citing *State v. Cabrales,* 2008-Ohio-1625, ¶ 40, quoting R.C. 2925.01(K) (in order to ship, transport, deliver, distribute, etc., "the offender must 'hav[e] control over' " the illegal substance); *see also State v. Jones,* 2011-Ohio-1108, ¶ 11 (4th Dist.).

{¶105} R.C. 2925.03(A)(2) provides, in pertinent part, "(A) [n]o person shall knowingly do any of the following * * * (2) [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

{¶106} "Possession" is generally defined as "having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K); *State v. Bennett*, 2024-Ohio-4557, ¶ 35, (4th Dist.); *Maynard*, at ¶ 30.  "Possession may be actual or constructive." *Bennett* at ¶ 35 citing *State v. Gavin*, 2015-Ohio-

2996, ¶ 35, (4th Dist.), quoting *State v. Moon*, 2009-Ohio-4830, ¶ 19, (4th

Dist.). "Actual possession exists when circumstances indicate that an

individual has or had an item within his immediate physical possession[.]"

*Id*. citing *State v. Kingsland,* 2008-Ohio-4148, ¶ 13 (4th Dist.). Constructive

possession, on the other hand, "exists when an individual knowingly

exercises dominion and control over an object, even though that object may

not be within his immediate physical possession." *Id.* citing *Gavin* at ¶ 35.

{¶107} In addition, R.C. 2901.22(B) provides:

> A person acts knowingly, regardless of purpose,
> when the person is aware that the person's conduct will
> probably cause a certain result or will probably be of a
> certain nature. A person has knowledge of circumstances
> when the person is aware that such circumstances
> probably exist. When knowledge of the existence of a
> particular fact is an element of an offense, such knowledge
> is established if a person subjectively believes that there is
> a high probability of its existence and fails to make inquiry
> or acts with a conscious purpose to avoid learning the fact.

*See Maynard*, at ¶ 31; *State v. Crumpton,* 2024-Ohio-5064, ¶ 28 (4th Dist.).

Legal Analysis

{¶108} Appellant does not specifically argue lack of proof of specific

elements, except for "possession." Appellant's sufficiency and "manifest

weight" arguments are set forth, generally, follows:

> None of the drugs were found in the actual
> possession of Mr. Jackson. All the contraband was found
> in another backpack, and there was no testimony offered

that any of the belongings of Mr. Jackson or identification of him were found inside the bag or backpack. An iPad was found inside one of the bags, but no evidence was offered that the iPad belonged to Mr. Jackson. There was some testimony that his brother had been driving the car the day before. No testimony was presented that any sort of DNA testing or fingerprint testing was found on the drugs or firearm. When asked about the contraband, Mr. Jackson denied any knowledge. The evidence was not sufficient to warrant convictions for drug trafficking, drug possession, weapons offenses, or possession of criminal tools.

{¶109} Appellant was convicted of 12 counts which included trafficking and possession of a fentanyl-related compound, trafficking and possession of cocaine, having a weapon while under disability, improper handling of a firearm and criminal tools. Counts One through Eight included firearm specifications. These counts have been set forth fully above at Paragraph Four.

{¶110} Appellant denies actual or constructive possession of the drugs found in the rental vehicle he was driving. However, the jury obviously found circumstantial evidence that appellant possessed the drugs. The State may prove its case through circumstantial evidence.

> It is well-established * * * that "a defendant may be convicted solely on the basis of circumstantial evidence." *State v. Nicely*, 39 Ohio St.3d 147, 151 (1988). "Circumstantial evidence and direct evidence inherently possess the same probating value." *Jenks,* paragraph one of the syllabus. "Circumstantial evidence is defined as

'[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * * ' " *Nicely,* 39 Ohio St.3d at 150, quoting Black's Law Dictionary (5 Ed.1979) 221. *See State v. Sheets*, 2025-Ohio- at ¶ 20 (4th Dist.); *State v. Wickersham,* 2015-Ohio-2756, ¶ 39 (4th Dist.); *see also State v. Barnes,* 2020-Ohio-3943, ¶ 23-24( 4th Dist.).

{¶111} At appellant's trial, the jury heard testimony from four State's witnesses. The trial court also admitted 27 State's exhibits.[6] In this appeal, appellant has not challenged the qualifications of the expert witness, the qualification and experience of the troopers, the findings on the report, or the chain of custody of the various items of physical evidence.

{¶112} Both Trooper Lewis and Trooper Day testified as to their background, years of experience, and years of training with the OSHP and specifically with drug interdiction. Both troopers testified that there was a hard hat and safety vest ("props") on the front passenger seat, yet they found no other evidence substantiating appellant's claim that he worked

---

[6] These exhibits included Exhibit 1, the video camera footage; Exhibit 13, a photograph of a child's backpack in which the .45-caliber Highpoint handgun was located, and a photograph of the Mason jar with pills, cocaine, and fentanyl; various photographs of the rental vehicle, interior and exterior, hard hat, and safety vest; various photographs of the marijuana residue, digital scales, sandwich baggies, Venom drink can, handgun; Enterprise rental documents; property control forms showing chain of custody for the firearm and drugs seized; and Exhibit 24, Brianna Ray's written report of the drug testing. Exhibit 19 consisted of the actual drugs sent for testing. 19-A was the fentanyl-cocaine mixture; 19-B contained ten 10-milligram oxycodone pills; 19-C contained 90 ten-milligram oxycodone pills; 19-D contained 14 grams of cocaine; and 19-E consisted of 10 grams of fentanyl.

construction.  Both troopers also explained the significance of appellant's

use of a rental vehicle.

{¶113} Both troopers identified appellant in the courtroom.  Trooper

Lewis testified that appellant denied knowledge of the marijuana residue, the

other substances, and the firearms.  However, both troopers testified that

appellant did not express an emotional reaction or surprise about the items or

about being arrested.  The jury heard the following additional testimony.

Trooper Lewis

{¶114} Trooper Lewis's testimony regarding probable cause for the

traffic stop has been set forth fully above.  Trooper Lewis also testified:

> [He says he's going down to West Virginia, two different jobsites, staying until Saturday, but he didn't know the name of the place.  He kept calling it Pike, Pike something, but he couldn't me exactly where he was headed to….He says foreman on a construction crew.  He had two different locations that he was headed to, but he couldn't give me the name of one of them.

{¶115} Based on the odor of marijuana, Trooper Lewis testified he

decided to search the rental car.  Appellant explained that "his lady" had

rented the vehicle.  Trooper Lewis testified that the vehicle was rented to

Nikki Hall for a month.  Trooper Lewis testified, "I asked him at one point

how long he had the truck, told me a week."  Then, because of the odor of

marijuana, he told appellant he was going to pat him down.  Trooper Lewis

testified: "So, he basically went from he had it for a week, and then once I told him I could smell marijuana he denied smoking any marijuana but said his girlfriend's brother, who had the vehicle the day before."

{¶116} Dispatch advised Trooper Lewis that appellant resided in Westland, Michigan, near Detroit, and that he had a suspended driver's license. Trooper Lewis identified State's Exhibits 5 and 6, which showed the Swisher Sweets package and marijuana residue. He found a digital scale, typically used for weighing drug amounts, under the center console. He also identified State's Exhibits 7 and 8, respectively photographs of the center console with scale and a closer shot of the scale with residue.

{¶117} Trooper Lewis testified that he flipped up the back seat and found a black duffle bag containing clothing and a Venom energy drink can with a false lid. When Trooper Lewis opened the top lid of the Venom can, he found a compressed powder, which ended up being approximately 72 grams of a fentanyl-cocaine mixture.

{¶118} Trooper Lewis testified that Trooper Day found a child's backpack from the storage compartment on the floor, which contained a .45 caliber Highpoint handgun. Trooper Day handed him a Mason jar which contained a white powder, 14 grams of cocaine, 10 grams of fentanyl, and 100 10 milligram oxycodone pills. Trooper Lewis also pulled clothes and

sandwich baggies out of the backpack. He explained that sandwich baggies are used for packaging dope to be resold. Trooper Lewis later testified that the drugs seized were valued at approximately $12,000 in cash.

{¶119} On cross-examination, Trooper Lewis testified he did not see the driver when appellant's truck passed and admitted that appellant did not appear to be avoiding him. He denied he decided to follow appellant because of the Florida tags. Trooper Lewis denied following close to cause appellant to be nervous and hopefully commit a traffic violation. Trooper Lewis admitted he did not know what CBD oil smells like and he has not had training about it.

Trooper Ryan Day

{¶120} Trooper Day testified he was sitting with Trooper Lewis on U.S. Route 23 at Milepost 12 in separate vehicles. He eventually assisted Lewis with the stop of the black Dodge 1500 appellant drove. Trooper Day testified as soon as he opened the driver's door, he noticed the strong odor of raw marijuana.

{¶121} Trooper Day identified State's Exhibit 2, the hard hat and reflective vest from appellant's truck. He also identified the digital scales. Trooper Day identified State's Exhibit 14, the Highpoint .45 caliber semiautomatic handgun he recovered from the backpack. Trooper Day also

found a sweatshirt and wrapped inside it was a Mason jar with pills and powder.  Trooper Day testified the firearm was later determined to be operable.

Brianna Ray

{¶122} Briana Ray testified she was employed as a Criminalist at the OSHP Crime Lab.  The court qualified Ray as an expert in drug chemistry.  Ray identified State's Exhibit 24, her written report.  Upon her testing, she identified Tramadol, Cocaine, and Fentanyl.  She was able to identify the presence of the compounds, but not any quantitative amounts.  She testified Tramadol is a Schedule IV drug.  Cocaine and Fentanyl are Schedule II substances.  She explained her testing procedures.  Her results were consistent.  She identified all tablets as Oxycodone.

Robert Iddings

{¶123} Mr. Iddings testified he is a Group Risk Manager Enterprise Rent-Acar, Alamo, and National (EAN Holdings).  He oversees the state of West Virginia and locations in Ohio, Kentucky, and Maryland.  He is familiar with the policies and procedures of Enterprise Rental Car and its record-keeping system.

{¶124} Mr. Iddings testified that every vehicle is cleaned  and sanitized, inside and outside, so that it will appear brand new for each

customer. Their procedures became even more stringent after Covid. The vehicle's condition and safety are checked each time a vehicle is returned.

{¶125} When a vehicle is returned, it is checked to make sure nothing belonging to the renter is left behind. At times, people leave items like cameras, cell phones, cell phone chargers, sunglasses, and toys. In his experience, no one has ever left a "vast amount of drugs" or large amounts of cash.

{¶126} Mr. Iddings identified State's Exhibits 25 and 26, respectively Enterprise rental agreements with Walter Jackson and Nikki Hall. The addresses on both rental agreements were the same. State's Exhibit 27 was described as a renter search history. This record was consistent with State's Exhibits 25 and 26, showing rentals for the relevant time period and excessive charges incurred.

{¶127} On cross-examination, Mr. Iddings admitted that guns and drugs such as small bags of marijuana have been found. He explained that people rent cars for vacation, work-related matters, or if they need a replacement vehicle due to damage. On redirect, Mr. Iddings admitted that people can rent cars to transport drugs.

{¶128} Based on the foregoing, we find appellant's convictions are supported by sufficient circumstantial evidence and are not against the

manifest weight of the evidence. Any rational trier of fact could have found all elements of the offenses proven beyond a reasonable doubt. And, the jury's verdict was not a manifest miscarriage of justice. Accordingly, appellant's fifth assignment of error is without merit. It is hereby overruled.

## Conclusion

{¶129}Based on the foregoing, we find none of appellant's assignments of error have merit. Accordingly, all assignments of error are overruled, and the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and appellant to pay costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**